Opinion issued March 1, 2016



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-14-00795-CV

———————————

**GERALD E. GILBERT, Appellant**

**V.**

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE, BOBBY PARVIS, CARLA JOSEPH, JAMES MASSBARGER, JUSTIN WATTERSON, THE UNIVERSITY OF TEXAS MEDICAL BRANCH, PAUL STRUNK, GLENDA ADAMS, STEPHEN SMOCK, AND TAWANA SMITH, Appellees**

---

On Appeal from the 412th District Court
Brazoria County, Texas
Trial Court Case No. 76482-I

---

## O P I N I O N

Appellant Gerald E. Gilbert is an inmate in the custody of the Texas

Department of Criminal Justice (TDCJ) at the Ramsey Unit in Rosharon, Texas.

He sued TDCJ, the University of Texas Medical Branch (UTMB), and several

individual employees of both entities. His claims initially stem from injuries he allegedly incurred in a bus accident in the Ramsey Unit parking lot in 2006. Over the next few years, he developed various medical problems that he attributed to the accident. In 2012, he requested a change in assignment and some special equipment, including an oval ring cushion and a medically therapeutic mattress— requests that his petition alleges were improperly handled or denied. He also alleged that, in 2013, his personal coaxial cables were seized from his cell's television set by a prison employee.

The trial court granted the defendants' motion to dismiss. We affirm.

## ISSUES ON APPEAL

Gilbert raises the following four issues here:

1. "Whether the district court by conspiracy in combination with improperly deprived plaintiff of his forum choice";

2. "Whether the district court erred proceeding to final judgment after plaintiff filed an amendment to cure failure to comply by substituted instrument, and whether substitution should have been allowed";

3. "Whether the district court erred by conducting an improper Alternative Dispute Resolution, under the pretense of a 'Hearing by [Submission]'";

4. "Whether the district court erred dismissing appellant's Title 42 U.S.C.A. §1983 civil rights cause of action for right of recovery for failure to comply with an inapplicable preempted state notice of claim, judicial administrative procedural requirement under Chapter 14, Texas Civil Practice and Remedies Code §14.005(a)(2), (b)."

We will discuss the underlying facts and Gilbert's claims as relevant to the analysis of each issue.

2

## VENUE

Gilbert's lawsuit was filed in Brazoria County on March 25, 2014. He addressed his original petition to the 23rd District Court of Brazoria County. His case was assigned, however, to the 412th District Court of Brazoria County.[1] In his first issue, Gilbert argues that assignment to the 412th was improper, and deprived him of his right to the venue of his choosing.

Appellees respond that, while Gilbert was entitled to file in any proper county, he "did not have a proprietary interest to select which judge would preside over his case in the county of filing." We agree.

Gilbert cites *Union Carbide Corp. v. Loftin*, 256 S.W.3d 869, 873 (Tex. App.—Beaumont 2008, pet. dism'd) for the proposition that a "plaintiff is generally permitted to choose venue first, and the plaintiff's choice of venue cannot be disturbed if the suit is initially filed in a county of proper venue." He then contends that the 23rd district court "was plaintiff's choice" and, thus, should not have been disturbed.

Gilbert's argument, however, conflates venues and individual courts. "In Texas, 'venue' refers to the *county* in which suit is proper within the forum state." *In re Great Lakes Dredge & Dock Co. L.L.C.*, 251 S.W.3d 68, 73 (Tex. App.—Corpus Christi 2008, orig. proceeding) (emphasis added). Thus, although Gilbert

---

[1] According to the Brazoria County District Clerk's website, cases are randomly assigned.

couches his argument in terms of *venue*, his actual complaint is that he was not allowed to choose a particular *court* within his chosen venue of Brazoria County. A plaintiff does not have a right to select a particular judge or court in a multi-court county. *In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (orig. proceeding).

We overrule Gilbert's first issue.

## AMENDED PLEADINGS

In his second issue, Gilbert argues that the trial court "erred by not allowing plaintiff to amend his pleadings." This appears to be a reference to two filings: (1) a June 24, 2014 Plaintiff's Motion for Substitution of Instrument attaching an Application to Proceed in Forma Pauperis and an inmate trust account statement, and (2) a July 21, 2014 Motion for Leave to File Supplement to Original Complaint attaching various documents in support of his claims (medical documents, affidavits, etc.).

On August 19, 2014, the trial court issued a letter opinion explaining its ruling on the outstanding motions. That letter expressed the view that Gilbert did not need leave to supplement, but granted the motion "to the extent Court permission is needed." Because the record does not reflect that Gilbert was prevented from supplementing or amending any pleadings, he has not shown any error related to the court's treatment of his June 24, 2014 or his July 21, 2014 motions.

4

After the trial court issued its August 18, 2014 Final Judgment, Gilbert filed a September 3, 2014 Motion for Leave to File an Amended Complaint. No ruling on that motion appears in the record. "Under rule of civil procedure 63, a party may amend its pleadings after the verdict, but *before the trial court has entered judgment*, unless the opposing party establishes surprise." *Hampden Corp. v. Remark, Inc.*, 331 S.W.3d 489, 497 (Tex. App.—Dallas 2010, pet. denied) (emphasis added) (citing *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 940 (Tex. 1990)). Gilbert cites no authority for the proposition that a plaintiff has a right to amend a petition after a final judgment is entered. Thus, to the extent that Gilbert's third issue is directed at the court's failure to grant this post-judgment motion to amend, he has not shown error.

We overrule Gilbert's second issue.

## HEARING BY SUBMISSION

In his third issue, Gilbert argues that the "trial court erred by conducting an improper hearing by submission to dismiss as frivolous with prejudice."

On May 28, 2014, the defendants filed a motion to dismiss under Chapter 14 of the Texas Civil Practice and Remedies Code, which provides:

> **§ 14.005. Grievance System Decision; Exhaustion of Administrative Remedies**
>
> (a) An inmate who files a claim that is subject to the grievance system established under Section 501.008, Government Code, shall file with the court:

(1) an affidavit or unsworn declaration stating the date that the grievance was filed and the date the written decision described by Section 501.008(d), Government Code, was received by the inmate; and

(2) a copy of the written decision from the grievance system.

(b) A court shall dismiss a claim if the inmate fails to file the claim before the 31st day after the date the inmate receives the written decision from the grievance system.

(c) If a claim is filed before the grievance system procedure is complete, the court shall stay the proceeding with respect to the claim for a period not to exceed 180 days to permit completion of the grievance system procedure.

TEX. CIV. PRAC. & REM. CODE § 14.005 (West 2002).

According to the defendants' motion to dismiss, Gilbert's lawsuit is related to two grievances, i.e., #2013153287 (filed May 29, 2013; final decision November 13, 2013) and #2013210052 (filed August 28, 2013; final decision October 21, 2013). Defendants' motion alleged that Gilbert (1) failed to "file a copy of the written grievance decisions or an affidavit stating the dates of the grievances and the written decisions" as mandated by section 14.005(a)(1), and (2) failed to file "within the 31-day period after receiving written decisions from the grievance system" as required by section 14.005(b).

Defendants' motion additionally claimed that dismissal was appropriate because Gilbert failed to file a complying trust account statement under section 14.006(f).

The inmate shall file a certified copy of the inmate's trust account statement with the court. The statement must reflect the balance of the account at the time the claim is filed and activity in the account during the six months preceding the date on which the claim is filed. The court may request the department or jail to furnish the information required under this subsection.

TEX. CIV. PRAC. & REM. CODE § 14.006(f) (West 2002).

On June 24, 2014, Gilbert filed a Motion of Objection to Dismiss Pursuant to Chapter 14 of the Texas Civil Practice and Remedies Code. Gilbert provided the required statements about his prior administrative grievances and the date of their final decisions as required by section 14.005(a)(1). He conceded that he did not file his lawsuit within 31 days "after the date the inmate receives the written decision from the grievance system." But, he contended that this requirement is unreasonable as applied to his claims, and that his claims should instead be subject to the two-year statute of limitations provided in section 16.003 of the Texas Civil Practice Remedies Code.

The trial court set defendants' motion to dismiss by submission for August 18, 2014. On August 19, 2014, the trial court issued a letter opinion explaining its decision to grant defendants' motion. That letter explained, in relevant part:

[T]he Joint Motion to Dismiss lists several grounds for dismissal. These are failure to comply with Chapter 14 by not filing within 31 days after receiving a response to Step 2 grievances, failure to attach copies of the grievances, failure to attach a trust fund statement, and failure to attach a statement of prior litigation. Although Mr. Gilbert did not file a motion for leave to supplement his Original complaint to address the Trust Fund Statement and Statement of Prior Litigation,

7

the Court believes that he cured the deficiencies when he filed his Trust Fund Statement and Statement of Prior Litigation. Mr. Gilbert never cured the failure to attach copies of his grievances even after this deficiency was pointed out by the Defendants. However, the issue he could not have cured is his failure to file his suit within 31 days after receiving his Step 2 grievances. Several cases have held that this is not able to be cured, and therefore require dismissal. . . . .

Therefore, I have signed the Order granting the State's Motion to Dismiss under Chapter 14.

The court's first final judgment, signed August 18, 2014, stated that the "all of Plaintiff's claims against Defendants are DISMISSED WITH PREJUDICE for failure to comply with Chapter 14 of the Texas Civil Practice and Remedies Code."

On September 3, 2014, Gilbert filed a Memorandum in Support of Motion for Reconsideration of Court's Order of Final Judgment to Dismiss with Prejudice. On September 5, 2014, the trial court signed a second Final Judgment expressly vacating its August 18, 2014 final judgment. The new judgment was substantively the same as the first judgment, except it changed "dismissed with prejudice" to "dismissed."

Gilbert argues that the trial court's final judgment was erroneous because a hearing by submission amounts to "a hybrid form of Alternative Dispute Resolution" that deprived him of due-process rights. He cites a federal statute permitting communication technology to be used in federal prison cases in lieu of the inmate's personal appearance:

8

To the extent practicable, in any action brought with respect to prison conditions in Federal court pursuant to section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility, pretrial proceedings in which the prisoner's participation is required or permitted shall be conducted by telephone, video conference, or other telecommunications technology without removing the prisoner from the facility in which the prisoner is confined.

42 U.S.C.A. §1997e(f)(1).

Section 1997(e) is inapposite, as it applies to federal court—not state court—proceedings, and it only governs pretrial proceedings that an inmate is "required or permitted" to attend.

Whether the trial court holds a hearing on a Chapter 14 motion to dismiss is left to the trial court's discretion. TEX. CIV. PRAC. & REM. CODE § 14.003(c) (West 2002) ("In determining whether Subsection (a) applies, the court *may* hold a hearing." (emphasis added)); *Hamilton v. Pechacek*, 319 S.W.3d 801, 808 (Tex. App.—Fort Worth 2010, no pet.) ("The plain language of the statute indicates that the trial court's determination to hold a hearing on a chapter 14 motion to dismiss is discretionary.").

We overrule Gilbert's third issue.

**CONSTITUTIONALITY**

In his fourth issue, Gilbert argues that the trial court erred by granting the defendants' motion to dismiss because applying Chapter 14's dismissal procedures to his federal civil rights claim is "unreasonable, unconstitutional and

9

inapplicable." Specifically, Gilbert complains about Chapter 14's requirement that the civil action be initiated within 31 days of the grievance decision. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.005(b). We read Gilbert's brief to challenge the constitutionality of the statute both facially and as applied. *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013) ("[T]o prevail on a facial challenge, a party must establish that the statute always operates unconstitutionally in all possible circumstances."); *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011) ("A litigant raising only an 'as applied' challenge concedes the general constitutionality of the statute, but asserts that the statute is unconstitutional as applied to his particular facts and circumstances.").

## A.   *Felder v. Casey*

In support of his argument that application of section 14.005(b)'s 31-day deadline for filing suit is facially unconstitutional, Gilbert relies on *Felder v. Casey*, 487 U.S. 131, 108 S. Ct. 2302 (1988). In *Felder*, the Supreme Court considered whether a state's notice-of-claim statute applied to a federal §1983 claim. *Id.* at 134, 108 S. Ct. at 2304–05. The statute in question prohibited the filing of any action against the state or its subdivisions, agencies, or officers unless the plaintiff had filed a written notice-of-claim within 120 days of his or her alleged injury. *Id.* at 136, 108 S. Ct. at 2305. The mandated notice had to include "an itemized statement of the relief sought." *Id.* at 136–37, 108 S. Ct. at 2305–06.

The Supreme Court held that the Supremacy Clause of the federal constitution pre-empted the application of the notice-of-claim statute for § 1983 claims. *Id.* at 151, 108 S. Ct. at 2313; *see also* U.S. CONST. art. VI, cl. 2 ("This Constitution, and the laws of the United States . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding"). While it recognized that states may establish rules of procedure governing litigation in their courts, the court admonished that rules of local practice cannot defeat federally-created causes of action. *Felder*, 487 U.S. at 138, 108 S. Ct. at 2306. The court held,

> Because the notice-of-claim statute at issue here conflicts in both its purpose and effects with the remedial objectives of § 1983, and because its enforcement in such actions will frequently and predictably produce different outcomes in § 1983 litigation based solely on whether the claim is asserted in state or federal court, we conclude that the state law is preempted when the § 1983 action is brought in a state court.

*Id.* at 138, 108 S. Ct. at 2307.

The state statute conflicted with the purpose of §1983 because the "predominant objective" of the statute was to minimize liability and expenses for the state while §1983 claims were designed to "provides compensatory relief to those deprived of their federal rights by state actors." *Id.* at 141, 143, 108 S. Ct. at 2308–09. The state statute would produce different outcomes based solely on

11

whether the claim was brought in state or federal court because there was no federal corollary requiring notice of claims before bringing claims in federal courts. *Id.* at 141, 108 S. Ct. at 2308. Finally, the court emphasized, "Civil rights victims often do not appreciate the constitutional nature of their injuries and thus will fail to file a notice of injury or claim within the requisite time period, which in Wisconsin is a mere four months." *Id.* at 152, 108 S. Ct. at 2314.

## B.     Post-*Felder* developments in the law

Since *Felder* was decided, a new federal law—the Prison Litigation Reform Act of 1995 (PLRA)—was enacted, making §1983 claims brought by indigent inmates subject to certain exhaustion of remedies requirements, as well as barring federal suits by inmates with at least three previous actions deemed frivolous.

(a) Applicability of administrative remedies

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C.A. § 1997e(a) (West Supp. 2000); *see also* 28 U.S.C.A. § 1915(g) (West Supp. 2000) (3-strikes provision).

In 2005, the Ninth Circuit considered the interaction between the PLRA's new administrative exhaustion requirements and an inmate's time-barred state § 1983 claim. *See Ngo v. Woodford*, 403 F.3d 620 (9th Cir. 2005), *rev'd by Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378 (2006). Specifically, the court

12

addressed whether "the district court properly dismissed a prisoner's complaint for failing to exhaust all available administrative remedies as required by the Prison Litigation Reform Act . . . even though the prisoner's administrative appeal was deemed time-barred and no further level of appeal remained in the state prison's internal appeals process." *Id*. at 622.

The *Ngo* court recognized the PLRA as "a dramatic departure from established Supreme Court precedent. *Compare Wilwording v. Swenson*, 404 U.S. 249, 251, 92 S. Ct. 407, 30 L.Ed.2d 418 (1971) (per curiam) (declaring that inmates "are not held to any stricter standard of exhaustion [of remedies]" than other civil rights litigants), with *id.* § 1997e(a)." 403 F.3d at 623. Ultimately, the *Ngo* court reversed the dismissal of the plaintiff's suit as inconsistent with the purposes of the PLRA:

> [A]dministrative exhaustion rules have two principal purposes. *See McCarthy v. Madigan*, 503 U.S. 140, 145, 112 S. Ct. 1081 (1992) (superseded by amendment of § 1997e(a)). The first is to protect an administrative agency's authority by giving the agency the first opportunity to resolve a controversy before a court intervenes in the dispute. *See id*. The second is to promote judicial efficiency by either resolving the dispute outside of the courts, or by producing a factual record that can aid the court in processing a plaintiff's claim. *Id*. at 145–46, 112 S.Ct. 1081.
>
> . . . .
>
> [W]e hold that Ngo exhausted all administrative remedies available to him as required by the PLRA when he completed all avenues of administrative review available to him: His administrative appeal was deemed time-barred and no further level of appeal remained in the

13

state prison's internal appeals process. We also hold that the PLRA's exhaustion requirement does not bar subsequent judicial consideration of an exhausted administrative appeal that was denied on state procedural grounds.

*Id*. at 624, 630–31.

The United States Supreme Court reversed, holding that "proper exhaustion of administrative remedies is necessary":

> The PLRA strengthened this exhaustion provision in several ways. Exhaustion is no longer left to the discretion of the district court, but is mandatory. *See Booth v. Churner*, 532 U.S. 731, 739, 121 S. Ct. 1819 (2001). Prisoners must now exhaust all "available" remedies, not just those that meet federal standards. Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative process. *Id*. at 734, 121 S. Ct. 1819. Finally, exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983.

*Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

On remand, the Ninth Circuit affirmed the district court's dismissal of the plaintiff's claim. And, because the plaintiff had waited months beyond the 15-day deadline to file his administrative appeal, the court declined to address whether the 15-day appeal window was facially constitutional, i.e., whether that requirement gives inmates "a meaningful opportunity to exhaust." *Ngo v. Woodford*, 539 F.3d 1108, 1110 (9th Cir. 2008) (citing *Felder*, 487 U.S. 131, 146 (1988). It also rejected the plaintiff's as-applied challenge, and left open the issue of whether

14

exceptional circumstances could excuse non-compliance with PLRA's requirements:

> It is unclear whether we can read exceptions into the PLRA's exhaustion requirement. *Compare Woodford v. Ngo*, 126 S. Ct. at 2393 (Breyer, J., concurring in the judgment), with *Booth v. Churner*, 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Even if we could, no such exception applies here. Ngo hasn't shown that administrative procedures were unavailable, that prison officials obstructed his attempt to exhaust or that he was prevented from exhausting because procedures for processing grievances weren't followed. Ngo argues that prison officials didn't follow procedures and misled him. However, the acts he complains about took place only after Ngo sent his March 20, 2001, letter to Deputy Warden Kane. As a result, they could have no effect on Ngo's ability to exhaust, as he had already missed the deadline.

*Id*. at 1110.

Texas courts have heeded the Supreme Court's admonishment that, under the PLRA, "proper exhaustion" means "compliance with an agency's deadlines and other critical procedural rules." *Leachman v. Dretke*, 261 S.W.3d 297, 309 (Tex. App.—Fort Worth 2008, no pet.) (quoting *Woodford*, 548 U.S. at 90–91, 126 S. Ct. at 2386). For example, the Fort Worth Court of Appeals held that dismissal of an inmate's suit with prejudice was proper after the plaintiff missed the 15-day window to file a Step 1 grievance against prison officials. *Id*. at 311; *see also id.* at 310–311 ("Following the reasoning of the Supreme Court in *Woodford*, we adopt the interpretation that the exhaustion of remedies requirement under section 501.008 of the government code and section 14.005 of the civil practice and

15

remedies code requires proper exhaustion of remedies, i.e., the timely filing of grievances, before an inmate may seek judicial review.").

The Fort Worth court left open the question of whether an "as applied" constitutional challenge to Texas's administrative procedures could be viable. *Id.* at 311. Specifically, it noted that it need not decide that issue because the plaintiff would not have benefited from "some kind of discovery rule applied as an exception to proper exhaustion," as he knew about his grievance before the 15-day deadline. *Id.*

Also relying on the post-*Felder* enactment of the PLRA, the Beaumont Court of Appeals has rejected a Supremacy Clause challenge to section 14.005(b)'s 31-day deadline, declining to hold that—under *Felder*—that deadline was preempted by federal law. *Thomas v. Bush*, 23 S.W.3d 215, 217–18 (Tex. App.—Beaumont 2000, pet. denied).

### C.     Gilbert's case

The provisions about which Gilbert complains are a part of a statutory scheme for inmates to exhaust their remedies within the inmate grievance system before filing suits, and shorten the time they have to file suit:

> **§ 501.008. Inmate Grievance System**
>
> (a) The department shall develop and maintain a system for the resolution of grievances by inmates housed in facilities operated by the department or under contract with the department that qualifies for certification under 42 U.S.C. Section 1997e and the department shall

16

obtain and maintain certification under that section. A remedy provided by the grievance system is the exclusive administrative remedy available to an inmate for a claim for relief against the department that arises while the inmate is housed in a facility operated by the department or under contract with the department, other than a remedy provided by writ of habeas corpus challenging the validity of an action occurring before the delivery of the inmate to the department or to a facility operated under contract with the department.

(b) The grievance system must provide procedures:

(1) for an inmate to identify evidence to substantiate the inmate's claim; and

(2) for an inmate to receive all formal written responses to the inmate's grievance.

(c) A report, investigation, or supporting document prepared by the department in response to an inmate grievance is considered to have been prepared in anticipation of litigation and is confidential, privileged, and not subject to discovery by the inmate in a claim arising out of the same operative facts as are alleged in the grievance.

(d) An inmate may not file a claim in state court regarding operative facts for which the grievance system provides the exclusive administrative remedy until:

(1) the inmate receives a written decision issued by the highest authority provided for in the grievance system; or

(2) if the inmate has not received a written decision described by Subdivision (1), the 180th day after the date the grievance is filed.

(e) The limitations period applicable to a claim arising out of the same operative facts as a claim for which the grievance system provides the exclusive remedy:

(1) is suspended on the filing of the grievance; and

(2) remains suspended until the earlier of the following dates:

17

(A) the 180th day after the date the grievance is filed; or

(B) the date the inmate receives the written decision described by Subsection (d)(1).

(f) This section does not affect any immunity from a claim for damages that otherwise exists for the state, the department, or an employee of the department.

TEX. GOV'T CODE ANN. § 501.008(d) (West 2012).

## § 14.005. Grievance System Decision; Exhaustion of Administrative Remedies

(a) An inmate who files a claim that is subject to the grievance system established under Section 501.008, Government Code, shall file with the court:

(1) an affidavit or unsworn declaration stating the date that the grievance was filed and the date the written decision described by Section 501.008(d), Government Code, was received by the inmate; and

(2) a copy of the written decision from the grievance system.

(b) *A court shall dismiss a claim if the inmate fails to file the claim before the 31st day after the date the inmate receives the written decision from the grievance system.*

(c) If a claim is filed before the grievance system procedure is complete, the court shall stay the proceeding with respect to the claim for a period not to exceed 180 days to permit completion of the grievance system procedure.

TEX. CIV. PRAC. & REM. CODE ANN. § 14.005 (emphasis added).

Although the 31-day deadline for filing a lawsuit is couched within a statute entitled "Exhaustion of Administrative Remedies," Gilbert contends that it operates as a statute of limitations rather than an administrative remedy because it

truncates when a suit can be filed in court to seek a judicial remedy, rather than governing procedures or timelines before an administrative agency to obtain an administrative remedy. For that reason, he argues that section 14.005(b) is analogous to the "notice of claim" requirement that the *Felder* court rejected as preempted under the Supremacy Clause. Nonetheless, the 31-day deadline has been characterized by other courts as "not a statute of limitations, but a procedural tool to screen inmate lawsuits." *Doyle v. Lucy*, No. 14-03-00039-CV, 2004 WL 612905, at *3 (Tex. App.—Houston [14th Dist.] Mar. 30, 2004, no pet.) (mem. op.). For the reasons below, we reject Gilbert's Supremacy Clause argument regardless of which characterization of section 14.005(b) is correct.

### 1. Facial Challenge

Changes in the law since *Felder* was decided have undercut largely, if not completely, the premise behind Gilbert's argument for invalidating section 14.005(b) as pre-empted by § 1983. As previously discussed, the *Felder* court expressed two primary concerns in invalidating Wisconsin's notice-of-claim requirement, i.e., (1) potentially different outcomes depending on whether a case was brought in state or federal court (because there was no such federal requirement), and (2) the possibility that inmates might not appreciate the constitutional nature of their injuries within the notice-of-claim time period.

19

Since the PLRA was enacted, these concerns from *Felder* do not apply to the section 14.005(b) 31-day time limit for filing suit. The PLRA requires all state administrative remedies be exhausted before suit can be filed in federal court, meaning that—assuming section 14.005(b) is an administrative exhaustion requirement—it would apply equally whether an inmate suit was filed in state or federal court.[2]

The concern that an inmate might not appreciate the constitutional nature of his or her claim is likewise not implicated by section 14.005(b)'s 31-day filing deadline because neither a state or federal suit can be brought until the inmate claim has been through the prison's internal grievance system. In other words, unlike the notice-of-claim requirement in *Felder*, the 31-day court filing deadline in section 14.005(b) does not come into play until *after* the inmate has identified his or her complaint and adjudicated it throughout the prison grievance procedures. *See Randle v. Wilson*, 26 S.W.3d 513, 516 (Tex. App.—Amarillo 2000, no pet.) ("This is not a circumstance wherein the inmate merely has 31 days to discover the claim and then initiate suit upon it; he already knows of it.").

Given the Supreme Court's reasoning in *Woodford*, we reject Gilbert's facial constitutional challenge to section 14.005(b). Under *Woodford*, an inmate's

---

[2]    And, if section 14.005(b) is instead a statute of limitations, federal courts borrow the state statute of limitations for § 1983 actions, *see Wallace v. Kato*, 549 U.S. 384, 387 127 S. Ct. 1091, 1095 (2007), which would again lead to the same application of the 31-day filing requirement.

misstep in timely complying with any prison internal grievance administrative procedure forecloses a § 1983 claim in state or federal court because of the requirement that all administrative procedures be properly and timely complied with. *Woodford*, 548 U.S. at 90, 126 S. Ct. at 2386 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). We see no reason that the Supreme Court would treat Texas's 31-day court filing requirement differently.

Accordingly, we hold that, on its face, the 31-day deadline in §14.005 of the Civil Practice and Remedies Code does not violate the Supremacy Clause of the federal constitution for §1983 claims. We overrule Gilbert's fourth issue.

### 2. As-applied

We interpret Gilbert's arguments about his inability to comply with the 31-day deadline as an as-applied challenge to section 14.005(b). Gilbert focuses his argument on the alleged unreasonableness of subjecting *pro se* inmates without legal training and with limited time in the law library to a 31-day limitations period. Such reasoning has been rejected by other courts, and we reject it here.

> [A] state may require inmates to comply with rules that make the trial process possible or that facilitate the functioning of our system of justice. *Hodge v. Prince*, 730 F. Supp. 747, 751 (N.D. Tex. 1990), *aff'd*, 923 F.2d 853 (5th Cir. 1991). A limitation period, such as the 31 day period at bar, is akin to such a rule. It exists not only to compel litigants to action, but also provides our judicial system an opportunity to timely and efficiently address legitimate claims and injuries, thus, it serves a reasonable purpose. Moreover, it is not unreasonable to

21

expect inmates to comply with it. For a prisoner who has already pursued a grievance through administrative channels and has exhausted his administrative remedies, 31 days to convert that grievance into a lawsuit is ample time to act. This is not a circumstance wherein the inmate merely has 31 days to discover the claim and then initiate suit upon it; he already knows of it.

*Randle v. Wilson*, 26 S.W.3d 513, 516 (Tex. App.—Amarillo 2000, no pet.); *see also Wallace v. Tex. Dep't of Criminal Justice-Institutional Div.*, 36 S.W.3d 607, 611 n.4 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) ("The 31 day period for filing suit in section 14.005(b) serves a reasonable purpose by allowing the judicial system an opportunity to address legitimate claims and injuries in a timely and efficient manner.").

Significantly, Gilbert does not argue that he was unaware of the deadline, or that prison or court officials interfered with his ability to comply with the deadline. As the Ninth Circuit did in *Ngo*, and the Amarillo Court of Appeals did in *Randle*, we leave open the question of whether—and under what circumstances—an inmate's individual circumstances could excuse compliance with administrative procedures or filing deadlines. We hold only that Gilbert has not made such a showing here.

We overrule Gilbert's fourth issue.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Massengale.