

# NUMBER 13-20-00310-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

SAN BENITO CONSOLIDATED
INDEPENDENT SCHOOL DISTRICT,                                    Appellant,

v.

MARIA CONCEPTION CRUZ,                                          Appellee.

On appeal from the 103rd District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Tijerina**
**Memorandum Opinion by Chief Justice Contreras**

Appellant San Benito Consolidated Independent School District (SBISD) appeals

the denial of its plea to the jurisdiction in this employment discrimination suit brought by

appellee Maria Conception Cruz.[1] By four issues, that we treat as one, SBISD argues the trial court erred when it denied its plea as to Cruz's age discrimination claim. We affirm.

## I. BACKGROUND

In September 2017, SBISD hired Nate Carman as its superintendent. In October 2017, at the direction of Carman, SBISD hired Hector Madrigal as the new executive director of academics, and Madrigal became Cruz's new supervisor.[2] Carman and Madrigal had previously worked together. At the time Carman and Madrigal began working for SBISD, Cruz worked as the director of elementary instructional implementation, overseeing twelve elementary schools and their respective principals. Cruz had been employed in that position for the previous thirteen years and had worked for SBISD for an aggregate of twenty-seven years.[3]

Madrigal quickly became displeased with Cruz's job performance and expressed his dissatisfaction to her. According to Cruz, Madrigal informed her on January 12, 2018, that she was going to be moved from her role as director because three other directors told Madrigal they were having difficulty working with Cruz.

On February 7, 2018, Cruz filed complaints of age discrimination with the president of SBISD's board and with the Texas Workforce Commission (TWC). In her charge with the TWC, Cruz stated:

---

[1] Appellee is identified in the judgment, notice of appeal, and some of the pleadings as "Maria Conception Cruz"; however, the documents in the record that Cruz filed herself, such as her complaint of discrimination with the Texas Workforce Commission, and her employment documents with SBISD have her middle name as "Concepcion."

[2] According to the record, Madrigal oversees ten directors and twenty-one principals as executive director of academics.

[3] Cruz was initially hired by SBISD in 1993 and retired in 2003. Cruz began working as director of elementary instructional implementation sometime in 2004.

Since Mr. Madrigal was hired, I have been subjected to a discriminatory work environment based upon my age. Mr. Madrigal has shown favoritism toward younger employees than myself. Ms. Theresa Servellon, Secondary Director of Instructional Implementation, who is substantially younger than myself as is Hector Madrigal is alleged to have issues with me that are my creation according to Mr. Madrigal. On approximately November 15, 2017, Mr. Madrigal told me that I could not get along with Ms. Servellon and that "I better make it good or you're not going to like my decision."[4] Mr. Madrigal since his hiring has made my work environment a living hell as he has with other older employees that he supervises, such as Dr. Patricia Quesada, Mary Julia Trevino to name a few who are all well over 40 years of age. I met with Ms. Servellon and attempted to convey my good will and intentions as made clear by Mr. Madrigal, however, it was not to Mr. Madrigal or Ms. Servellon's satisfaction who are both substantially younger than myself. Subsequently afterwards, on January 12, 2018, Mr. Madrigal informed me that I would need to be moved and not to cry because there were 3 directors who didn't get along with me.[5]

On February 1, 2018, I decided to meet with Dr. Nate Carman regarding my complaints against Mr. Madrigal and his discriminatory treatment. The meeting lasted for approximately 1 hour. To my chagrin, after expecting Dr. Carman to assist me, he had prepared prior to meeting with him 3 options: (1) To write a resignation letter immediately that would take effect during the end of the 2018-2019 school year so that my title and salary would remain the same (2) To retire at the end of the 2017-2018 school year, and receive 2 additional months of pay, subject to board approval [or] (3) To remain an employee for the 2018-2019 school year to a demoted position as coordinator with significant less pay and responsibilities. I was given until February 19, 2018, to make my decision from the above 3 options. It must be noted that the option of staying in my current job without offering a resignation was not an option and I believe that the attempt to force my retirement is in itself, discriminatory based upon my age.

Furthermore, since the inception of Dr. Nate Carman as Superintendent, highly educated, skilled, and loyal female employees have been discriminated against. Ms. Linda McKinney, Payroll Clerk, Dr. Patricia Quesada, Ms. Mary Julia Trevino, and former employees Mary Alice Martinez and Margot Torres, have experienced gender discrimination while

---

[4] Madrigal told SBISD's internal investigator that "he did not recall a conversation that Ms. Cruz is claiming he had with her on November 15th."

[5] Madrigal told SBISD's internal investigator that he "never told [Cruz] that she was going to be moved"; however, he subsequently testified at his deposition that he asked Carman to remove Cruz in "January [or] February." Likewise, his supervisor Nate Carman acknowledged in his deposition that Cruz made an appointment with him on February 1, 2018 to discuss the way Madrigal treated her and the fact that Madrigal had mentioned to her that he was going to have to move her.

3

Dr. Carman has approved all of our demotions during the 2017-2018 school year that has approximately 4 months remaining of educational instruction.

I have always received excellent performance evaluations during my career. I have attended L. Central College, Texas Women's University, and graduated from Southern Methodist University with a Master's in Education. I grew up in the Rio Grande Valley and decided to return and serve the community after I was educated.

On April 14, 2018, Cruz amended her charge with the TWC and added a complaint for retaliation.

On May 4, 2018, a report from SBISD's internal investigation found Cruz had not been discriminated against based on her age because she had not suffered an adverse employment action. On May 24, 2018, Cruz appealed the result of the investigation and simultaneously filed a formal complaint form with Carman.

In June 2018, Madrigal gave Cruz a "Professional Performance Appraisal," assessing her "knowledge of programs" and "punctuality of reports" as "below expectations" and included a comment that "Cruz had to be reminded several times about due dates."[6] On June 19, 2018, Carman wrote a letter to Cruz advising her that she would be assigned to the lower position of Title 1 Coordinator for the next school year (2018–2019), beginning on July 2, 2018. Cruz was sixty-eight years old at the time. On June 25, 2018, Carman wrote a letter to Olivia Flores advising her that she would be assigned to Cruz's former position as director of elementary instruction for the next school year (2018–2019), beginning on July 2, 2018. Flores was sixty-seven years of age at the time and a principal at one of the elementary schools Cruz oversaw as a director.

---

[6] In her interrogatory responses, Cruz explained that Madrigal "was responsible for knowingly and intentionally placing these unobtainable deadlines on [Cruz] in efforts of creating a hostile work environment." Cruz then listed nine examples of instances where Madrigal allegedly assigned her projects at the last minute with unreasonable deadlines.

4

On June 26, 2018, Cruz again amended her charge with the TWC to add:

On June 19, 2018, [SBISD] has continued its aggression and retaliation concerning my employment. I was informed in writing that my position would become Title I Coordinator. This position is completely different than my previous position Director of Elementary Instructional Implementation. Also, I have been informed that my salary will be "adjusted" during the 2019-2020 school year. Adjusted means I will be making less salary after the 2018-2019 school year. Additionally, this is an adverse employment action because my salary will be affected and reassigned to a different job classification that is a demotion. Lastly, my employer has provided a poor evaluation after my opposition to workplace discrimination from a professional performance evaluation conducted by Hector Madrigal. It is the lowest score and evaluation in my 27 years of employment with [SBISD]. I was provided with two categories of below expectation and a negative comment that I had to be reminded several times about due dates. I deny the assertions that I am not knowledgeable of the programs and am not punctual regarding my reports.

I am asking the Texas Workforce Commission; Division of Civil Rights to investigate my claim of age discrimination and retaliation in violation of [§] 21.051 and [§] 21.055 of the Texas Labor Code.

On August 8, 2018, Cruz amended her TWC complaint and added that she had been officially reassigned. In October 2018, the TWC issued Cruz a right to sue letter.

The following year, on July 6, 2019, Carman reassigned Flores back to a principal position at an elementary school for the upcoming year (2019-2020), beginning on July 17, 2019. Flores was replaced as director of elementary instructional implementation by another elementary school principal, Dilia Cornett. Cornett was forty-nine years old.

In November 2019, Cruz filed suit against SBISD for age discrimination and for retaliation. Cruz's petition largely mirrored her most recent charge with TWC, except she added that she "was replaced by a younger and less qualified employee" and that her "replacement was selected after [Cruz] filed her discrimination complaint on February 7, 2018."

5

SBISD filed a combined motion for summary judgment and plea to the jurisdiction arguing that Cruz had failed to present evidence supporting a prima facie case as to her age discrimination and retaliation claims. Specifically, as to the age discrimination claim, SBISD argued that: (1) Cruz's pleadings failed to establish a prima facie case because she was replaced by Flores, who was less than two years younger than Cruz; and (2) SBISD had legitimate, non-discriminatory reasons for Cruz's reassignment. Cruz filed a response arguing that her true replacement was Cornett, not Flores, and that there was a fact issue as to whether SBISD's proffered reasons were a pretext for age discrimination. Cruz attached excerpts of depositions of herself, Carman, Madrigal, Flores, Servellon, and the former director of human resources for SBISD, Kevin Phillips.

After a hearing, the trial court granted SBISD's summary judgment motion and plea to jurisdiction as to Cruz's retaliation claim but denied it as to her age discrimination claim. This interlocutory appeal followed.[7] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (providing for interlocutory appeal from a trial court's order on a plea to the jurisdiction).

## II.    DISCUSSION

By its sole issue, SBISD argues the trial court erred when it denied its plea to the jurisdiction as to Cruz's age discrimination claim.

## A.    Standard of Review

A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction. *Id.* Whether a trial court has subject matter jurisdiction and whether the

---

[7] Cruz has not appealed the dismissal of her retaliation claim.

6

pleader has alleged facts that affirmatively demonstrate the trial court's subject matter jurisdiction are questions of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

The plaintiff has the initial burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *see Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). If the plaintiff pleaded facts making out a prima facie case and the governmental unit instead challenges the existence of jurisdictional facts, then we consider the relevant evidence submitted. *Metro. Transit Auth. of Harris Cty. v. Douglas*, 544 S.W.3d 486, 492 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *see Garcia*, 372 S.W.3d at 635. When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the plaintiff. *Douglas*, 544 S.W.3d at 492; *see Garcia*, 372 S.W.3d at 635. We indulge every reasonable inference and resolve any doubts in the plaintiff's favor. *Douglas*, 544 S.W.3d at 492; *see Miranda*, 133 S.W.3d at 226. If the relevant evidence is undisputed or if the plaintiff fails to raise a fact question on the jurisdictional issue, then the trial court rules on the plea as a matter of law. *Garcia*, 372 S.W.3d at 635; *see Harris Cty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 798–99 (Tex. 2016) (op. on reh'g).

## B.  Texas Commission on Human Rights Act

Governmental units, including school districts, are immune from suit unless the State consents. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 763 (Tex. 2018). Governmental immunity from suit deprives a trial court of subject-matter

jurisdiction and is properly asserted in a plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 225–26. The Texas Commission on Human Rights Act (TCHRA) waives immunity for governmental units, but only when the plaintiff states a claim for conduct that actually violates the statute. *Clark*, 544 S.W.3d at 763. If a plaintiff fails to allege a violation of the TCHRA, then the trial court does not have jurisdiction and the claim should be dismissed. *Garcia*, 372 S.W.3d at 637.

As relevant to this case, the TCHRA prohibits age discrimination by employers and protects employees who are "40 years of age or older." *See* TEX. LAB. CODE ANN. §§ 21.001, 21.051, 21.055, 21.101; *Tex. Tech. Univ. Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 304–05 (Tex. 2020); *Garcia*, 372 S.W.3d at 640–42. An "employer" includes a county, municipality, state agency, or state instrumentality, regardless of the number of individuals employed. TEX. LAB. CODE ANN. § 21.002(8)(D). Generally, an employer commits an unlawful employment practice "because of" an employee's age if the employee's age was "a motivating factor" for the practice, "even if other factors also motivated the practice." *Id.* § 21.125(a); *Flores*, 612 S.W.3d at 305. Section 21.051 of the labor code states that "[a]n employer commits an unlawful employment practice if because of . . . age the employer . . . discriminates in any . . . manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." TEX. LAB. CODE ANN. § 21.051(1); *Cox v. Waste Mgmt. of Tex., Inc.*, 300 S.W.3d 424, 432 (Tex. App.—Fort Worth 2009, pet. denied).

Because the TCHRA is modeled after federal civil rights law, we may look to analogous federal precedent for our guidance. *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 446 (Tex. 2004); *Brownsville Indep. Sch. Dist. v. Alex*, 408 S.W.3d 670,

674 n.6 (Tex. App.—Corpus Christi–Edinburg 2013, no pet.); *see* TEX. LAB. CODE ANN. § 21.001.

## C. Evidentiary Burdens

To establish unlawful discrimination under the TCHRA, a plaintiff may rely on either direct or circumstantial evidence. *Clark*, 544 S.W.3d at 782. A case based on circumstantial evidence is referred to as a "pretext" case. *See Quantum Chem. Co. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001) (per curiam). In a pretext case, the plaintiff's ultimate goal is to show that the employer's stated reason for the adverse action was a pretext for discrimination. *Id.*

Cruz concedes that she has no direct evidence of discrimination and that her case is a circumstantial case. *See id.* at 475. When a plaintiff relies on circumstantial evidence to establish a discrimination claim, we follow the burden-shifting framework the United States Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Flores*, 612 S.W.3d at 305; *Clark*, 544 S.W.3d at 764, 782. Under this framework: (1) the plaintiff must first create a presumption of illegal discrimination by establishing a prima facie case; (2) the defendant must then rebut that presumption by producing evidence of a legitimate, non-discriminatory reason for the employment action; and (3) the plaintiff must then overcome the rebuttal evidence by producing evidence that the defendant's stated reason is a mere pretext. *Flores*, 612 S.W.3d at 305; *Clark*, 544 S.W.3d at 782. If a plaintiff fails to establish a prima facie case against a governmental unit or overcome the rebuttal evidence, then the trial court lacks jurisdiction and must dismiss the case. *See Garcia*, 372 S.W.3d at 635; *Miranda*, 133 S.W.3d at 225–26.

## 1. Prima Facie Case

We must first determine whether Cruz presented a prima facie case raising a presumption of illegal age discrimination. *See Toennies*, 47 S.W.3d at 479.

In an age-discrimination case, the plaintiff establishes a prima facie case with evidence that she: (1) was a member of the protected class (that is, 40 years of age or older); (2) was qualified for the position at issue; (3) suffered a final, adverse employment action; and (4) was either (a) replaced by someone significantly younger or (b) otherwise treated less favorably than others who were similarly situated but outside the protected class. *Flores*, 612 S.W.3d at 305; *see Garcia*, 372 S.W.3d at 632; *AutoZone v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam). SBISD does not dispute that Cruz presented evidence of the first three elements, so we need only address the fourth—i.e., whether Cruz presented evidence that she was replaced by someone significantly younger or otherwise treated less favorably than others similarly situated but outside the protected class.

SBISD argues that it established as a matter of law that Flores was Cruz's replacement because Flores assumed Cruz's former position and duties for a year before being demoted and replaced by Cornett. *See Baker v. Gregg County*, 33 S.W.3d 72, 81 (Tex. App.—Texarkana 2000, no pet.) ("In the context of age discrimination, a terminated employee is replaced by another person when the terminated employee's position is filled by that person and that person is assigned the terminated employee's former job duties."). Accordingly, SBISD argues, Cruz was replaced by someone insignificantly younger. *See Garcia*, 372 S.W.3d at 641 ("[A]n inference of age discrimination 'cannot be drawn from the replacement of one worker with another worker insignificantly younger.'" (quoting

*O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312–13 (1996))). Cruz argues that she raised a fact issue as to whether she was replaced by someone significantly younger because she disputes SBISD's assertion that Flores was her real replacement and instead argues Cornett was her replacement. *Cf. Garcia*, 372 S.W.3d at 632, 642 ("Because it is *undisputed* that the plaintiff was replaced by an older worker, she has failed to allege a prima facie case, and the trial court should have granted the defendant's plea to the jurisdiction." (emphasis added)). We agree with Cruz.

Here, the evidence before the trial court showed that Madrigal and Carman were aware of Cruz's complaint of age discrimination for four months before she was eventually demoted. According to Servellon's deposition testimony, Flores believed that Carman and Madrigal wanted Cornett in Cruz's director position "from the very beginning" and that Flores was never intended to be the permanent replacement for Cruz.

Flores testified in her deposition that she did not apply to be Cruz's replacement and that Madrigal called her unexpectedly in June of 2018 and told her he was appointing her to Cruz's position. Flores got the impression that she was being reassigned without having a choice in the matter, and she had "never" talked to Madrigal or Carman about wanting Cruz's job. Flores explained her job at the time as a principal for an elementary school was "as far as I wanted to go" and that Cruz's director position was not posted for anybody else to apply. When she was reassigned again the following year, Flores was "blindsided" by the decision because she had received a positive performance evaluation. Flores did not ask Madrigal the reason for her second reassignment because she was "in shock," and Madrigal did not give her a reason.[8] Flores was never written up by Madrigal

---

[8] In his deposition, Madrigal stated that Flores was removed from the director position because "her vision was not the same of what we were trying to do" and because "there were some decisions that she

11

or Carman; she was unaware of any rumors or information that she was performing the job poorly; and no complaints were made against her while working as director.

Finally, Carman admitted he gave Cruz the three options that Cruz notes at their meeting on February 1, and that he gave her two weeks to consider her options. During his deposition, the following exchange occurred:

[Carman]: I think it was two weeks. She asked me for the numbers, what that would actually look like financially, and that she needed to discuss it with her husband.

[Counsel]: Why didn't you move her—why didn't you demote her within those two weeks? Why did you wait?

[Carman]: Again, I had given her options and—

[Counsel]: But she didn't take those options, right?

[Carman]: I had given her options to consider—

[Counsel]: She didn't take them.

[Carman]: And a timeline.

. . .

[Counsel]: Did she take the options, yes or no?

[Carman]: She did not, no.

[Counsel]: What did she do? She filed a complaint on you, didn't she?

[Carman]: She filed a DIA complaint, yes.

[Counsel]: Within six days after you met with her?

---

made that were contrary to what we were trying to get done when it came in regards to the writing of curriculum resources." However, Madrigal did not elaborate or articulate any details as to how his and Carman's vision differed from Flores's or what decisions she made that Madrigal and Carman disapproved of, and Flores stated in her deposition that she had never heard of these concerns. Madrigal conceded that he did not provide Flores with anything in writing informing her that she would be removed from the director job if her performance did not improve. In his deposition, Carman stated that Flores was removed from the director position because "we felt she was better suited as an elementary principal, which is what most of her administrative experience was, and felt she could better serve the district in that capacity."

[Carman]:     Very likely.

From this evidence—including testimony that Madrigal and Carman wanted Cornett to be Cruz's replacement from the very beginning, their awareness of Cruz's complaint of age discrimination before Flores was appointed, and their delay in demoting Cruz after she filed a discrimination complaint—a person could reasonably infer that Flores was not Cruz's permanent replacement and that SBISD temporarily appointed Flores to skirt Cruz's complaints.[9] *See Douglas*, 544 S.W.3d at 492; *Garcia*, 372 S.W.3d at 635; *Miranda*, 133 S.W.3d at 226. And, it is undisputed that, after receiving a positive job performance for her only year as a director, Flores was permanently replaced by Cornett, who is substantially younger than Cruz and Flores. We conclude that Cruz raised a fact issue as to whether she was replaced by someone significantly younger and therefore established a prima facie case of age discrimination. *See Flores*, 612 S.W.3d at 305; *cf. Mercer v. Capitol Mgmt. & Realty, Inc.*, 242 F. App'x 162, 163 (5th Cir. 2007) (per curiam) ("Mercer has offered no proof to rebut Capital's assertion that the persons replacing her were not substantially younger than she was.").

With Cruz having established a prima facie case, the burden then shifted to SBISD to produce a legitimate, non-discriminatory reason for demoting her. *See Flores*, 612 S.W.3d at 305; *Clark*, 544 S.W.3d at 783.

### 2. Legitimate, Non-Discriminatory Reasons

SBSID argues Cruz's work was "sub-par" and identifies the following reasons: Cruz "submitted her work in an untimely manner," had difficulties working cooperatively with colleagues, "failed to offer solutions," and "lacked knowledge about instructional material."

---

[9] SBISD's investigator noted that Cruz "stated it was clear Dr. Carman and Madrigal had spoken but does not elaborate."

13

We note that Cruz's evaluation performed by Madrigal shortly before she was demoted only assessed her performance as "below expectations" on her "knowledge of programs" and "punctuality of reports" and included a comment that "Cruz had to be reminded several times about due dates." In his deposition, Madrigal stated that he needed Cruz replaced with "somebody that was going to be effective and timely on their paperwork" and noted that he received complaints from principals supervised by Cruz.

Carman submitted an affidavit in which he stated that "[a]fter my leadership team and I had an opportunity to work with [Cruz], it became clear that she was not capable of fulfilling our expectations regarding her role in implementing instruction at the elementary campuses." In his deposition Carman explained:

> [Cruz] was not doing her job at the level, per Mr. Madrigal's reports. Again, I had direct knowledge of the one where I asked for three simple things from the two directors, Ms. Cruz and Ms. Servellon. Ms. Servellon had the information to me from the secondary principals in a very timely fashion. Ms. Cruz had nothing and apparently could not recall being asked to get that information. In that conversation, Ms. Servellon indicated that she had had to cover several times for Ms. Cruz. So my knowledge of the situation at that point in time was that Ms. Cruz was not performing her job at a satisfactory level, not at the level we needed it to be to move the district forward.

We will assume, without deciding, that SBISD produced evidence of legitimate, non-discriminatory reasons for Cruz's demotion. Thus, the burden shifted back to Cruz to raise an issue of fact as to whether SBISD's stated reasons were a mere pretext. *See Flores*, 612 S.W.3d at 305; *Clark*, 544 S.W.3d at 783; *Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 899 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also Easterling v. Tensas Par. Sch. Bd.*, 682 F. App'x 318, 322 (5th Cir. 2017) (per curiam) ("Easterling must then raise a genuine issue of material fact whether *each* of those reasons is

14

pretextual, or alternatively that, while those reasons may be true, her sex was also a motivating factor.").

### 3. Pretext

Here, Cruz could raise a fact issue as to whether SBISD's proffered reasons for her demotion were a pretext for age discrimination by presenting evidence that SBISD's proffered reasons were false or "unworthy of credence." *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48 (2000); *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007); *Little v. Tex. Dep't of Criminal Justice*, 177 S.W.3d 624, 631–32 (Tex. App.—Houston [1st Dist.] 2005, no pet.). A reasonable inference that discrimination was a motivating factor may be made if the plaintiff provides evidence that the reasons given were false or unworthy of credence. *See Reeves*, 530 U.S. at 147 ("[I]t is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation."); *Toennies*, 47 S.W.3d at 481–82; *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex. 2003) (per curiam).

"Evidence that an employer is 'pleased with an employee's work performance supports a finding of pretext when that evidence contradicts the reason given by the employer of poor performance.'" *Bell Helicopter Textron, Inc. v. Burnett*, 552 S.W.3d 901, 915–16 (Tex. App.—Fort Worth 2018, pet. denied) (quoting *Dell, Inc. v. Wise*, 424 S.W.3d 100, 112 (Tex. App.—Eastland 2013, no pet.)); *see Toennies*, 47 S.W.3d at 481. Pretext may also be inferred from unexplained inconsistencies, weaknesses, implausibilities, or contradictions in the employer's proffered reasons for its actions. *See Easterling*, 682 F. App'x at 322 ("It is true that an 'unexplained inconsistency' in the employer's proffered

15

justification is 'evidence from which a jury could infer' pretext."); *see also, e.g.*, *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 235–36 (5th Cir. 2015); *Burrell*, 482 F.3d at 415; *Gee v. Principi*, 289 F.3d 342, 347–48 (5th Cir. 2000). And a failure to document complaints and discuss workplace problems may also support an inference of pretext. *See Vaughn v. Woodforest Bank*, 665 F.3d 632, 638–39 (5th Cir. 2011); *Lloyd v. Georgia Gulf Corp.*, 961 F.2d 1190, 1195 (5th Cir. 1992) ("[W]hen an employer's stated motivation for an adverse employment decision involves the employee's performance, but there is no supporting documentation, a jury can reasonably infer pretext."); *see also Laxton v. Gap, Inc.*, 333 F.3d 572, 580–82 (5th Cir. 2003). Finally, although the presumption of discrimination disappears once the defendant meets its burden of production, it is still proper to consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual. *Little*, 177 S.W.3d at 631–32; *see Reeves*, 530 U.S. at 143 ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.").

### 4. Rebuttal Evidence

As noted, SBSID argued Cruz's work was "sub-par" because she "submitted her work in an untimely manner," had difficulties working cooperatively with colleagues, "failed to offer solutions," and "lacked knowledge about instructional material."

However, there are inconsistencies in the reasons offered and actions taken by Madrigal and Carman as to Cruz's demotion. *See Burton*, 798 F.3d at 235; *Gee*, 289 F.3d at 347–48. Madrigal told SBISD's investigator he did not tell Cruz he was going to move her, but he acknowledged in his deposition he did in fact tell her that. Madrigal stated that

Cruz was removed in part because she did not cooperate well with coworkers, but his evaluation of Cruz performed just before her demotion provided that Cruz's performance in that area was "Satisfactory," and Carman never mentioned this as a reason for Cruz's demotion.[10] *See Vaughn*, 665 F.3d at 638–39; *Laxton*, 333 F. 3d at 580–81. The same is true as to Cruz "Offering Solutions to Problems"—Madrigal assessed this area as "Satisfactory" in his pre-suit evaluation, and Carman did not mention this as a reason for her demotion.[11] *See Vaughn*, 665 F.3d at 638–39; *Laxton*, 333 F.3d at 580–81

According to Carman's deposition, part of the reason Cruz was demoted was because the schools she was responsible for had "declining" "student achievements" due to lower test scores; however, Madrigal never mentioned student achievements or test scores, nor does Cruz ever note that Carman or Madrigal ever expressed to her a concern or displeasure regarding these matters.[12] The brunt of SBISD's displeasure, as reflected in the record and articulated by Madrigal and Carman, was Cruz's timeliness. However, Cruz alleged that Madrigal "intentionally and knowingly" assigned her tasks at the last minute with unreasonable deadlines and presented nine examples of these occurrences. Cruz also alleged that Madrigal never wrote her up or told her how she needed to improve her performance. *See Vaughn*, 665 F.3d at 638–39; *Laxton*, 333 F.3d at 580–81; *Lloyd*, 961 F.2d at 1195. All of this casts doubt as to SBISD's proffered reasons and supports

---

[10] In his deposition, Madrigal stated Cruz was removed in part because "many" principals told him Cruz "was not being helpful"; however, when pressed, Madrigal could only recall two of the twelve principals complaining about Cruz.

[11] In support of this reason, SBISD points only to Madrigal's deposition testimony where he simply stated "from what I can recall, she never offered solutions."

[12] When pressed, Carman conceded that he did not send Cruz any documentation "directly blaming her for the lower test scores." In Cruz's answers to SBISD's interrogatories, she stated: "The 2018 accountability rating for each of the 11 elementary schools met standards. Several elementary campuses received different distinction in academics achievement in different subjects. Furthermore, [Cruz] has increased the rating of the gifted and talented program for the district . . . ."

an inference of pretext. *See Burton*, 798 F.3d at 235–36; *Burrell*, 482 F.3d at 415; *Gee*, 289 F.3d at 347–48.[13]

Cruz also submitted into the record the evaluations of her performance as a director in 2017, 2016, 2014, 2011, 2007, and 2006, all of which gave Cruz the highest possible recognition in every section assessed ("Clearly Outstanding"), including the areas later rated poor or satisfactory by Madrigal and offered by SBISD as legitimate and non-discriminatory reasons for her demotion: "knowledge of programs," "cooperation," "punctuality of reports," and "offering solution to problems." Cruz's evaluation for 2017, the year immediately preceding Madrigal's and Carman's employment with SBISD, noted at length the reasons for her outstanding scores.[14] The cumulative strength of these

---

[13] There are inconsistencies surrounding Flores's removal, too: Madrigal and Carman provided that Flores "did not live up to the expectations" or did not share their "vision," but Flores stated she received a good performance assessment, was not written up, and was not aware of any complaints.

[14] As to Cruz's "Accuracy of Reports," her 2017 evaluation stated:

Cruz is meticulous in the accuracy of the reports she prepares for the office of Leadership & Performance and takes the initiative to develop the reports prior to the request for them by anticipating their [need] based upon her many years of experience in the school district leadership positions. She is present in all critical school leadership meetings and offers her assistance in preparing for such meetings well in advance.

Her 2017 evaluation provided the following details as to the other areas assessed:

(1) "Cooperation": "Cruz lends herself tirelessly to promote the goals of the RE-IMAGINE 2021/5 Year Strategic Plan at both the campus level and district levels. She always avails herself to work as many hours as needed to complete a project on daily basis and throughout the weekend;"

(2) "Knowledge of Programs": "Cruz has an extensive knowledge of all instructional programs being implemented throughout the school district and is an invaluable resource in this area. Very often, she is the 'go to' person in meetings regarding the necessary components required to ensure the fidelity of program implementation;"

(3) "Offering Solutions to Problems": "Cruz is a natural problem solver and does so with great finesse at the lowest possible levels of administration to ensure immediate attention for the parties concerned. She does an excellent job of holding parent and school employees meetings and keeps detailed notes regarding them for reference."

The second page of the 2017 evaluation, presumably containing the "Punctuality of Reports" section, is not included in the record; however, her evaluations for 2016, 2014, 2011, 2007, and 2006 assessed her as "clearly outstanding" for this section. Madrigal's 2018 evaluation only contained the scoring number assessed for each section (1–5 representing a range from "Unsatisfactory" to "Clearly Outstanding") and provided no details for the scoring assigned to those categories.

18

evaluations also calls SBISD's proffered reasons into doubt. *See Toennies*, 47 S.W.3d at 481 ("This is more than a scintilla of evidence that Quantum regarded Toennie's job performance as satisfactory, which contradicts the company's argument that he was fired for poor performance."); *Bell Helicopter*, 552 S.W.3d at 915–16; *Dell*, 424 S.W.3d at 112.

### 5. Conclusion

All of this rebuttal evidence, when viewed as a whole and in the light most favorable to Cruz, casts doubt on SBISD's proffered non-discriminatory reasons for demoting Cruz and undermines its credibility. *See Reeves*, 530 U.S. at 147; *Douglas*, 544 S.W.3d at 492; *Toennies*, 47 S.W.3d at 481; *Burton*, 798 F.3d at 235; *Lloyd*, 961 F.2d at 1195; *see also Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir. 2000) ("Although defendants contested Russell's case, their evidence is not of such magnitude that a reasonable jury could *only* find in their favor (i.e., that their justification for terminating Russell was not pretextual)."). And a reasonable inference can be made that age was a motivating factor in demoting Cruz based on: the evidence supporting an inference that SBISD's proffered reasons were unworthy of credence; the circumstances and reasons (or lack thereof) surrounding the appointment and removal of Flores; Cornett's age in relation to Cruz (approximately twenty years younger); the delay in Cruz's demotion after she filed a discrimination complaint; and the evidence that Carman and Madrigal wanted Cornett in Cruz's position from the very beginning. *See* TEX. LAB. CODE ANN. § 21.125(a); *Reeves*, 530 U.S. at 147 ("Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision."); *Flores*, 612 S.W.3d at 305; *see also Mackey v. Enventives, L.L.C.*, 802 F. App'x 835, 835

(5th Cir. 2020) (per curiam) (noting that rebuttal evidence raising a fact issue as to pretext, "combined with the prima facie case, will suffice to create a genuine [dispute] of a material fact such that summary judgment is inappropriate").

We conclude Cruz presented evidence raising a fact issue as to whether SBISD's reasons were a pretext for age discrimination.

## D. Summary

Cruz presented sufficient evidence to raise a fact issue as to whether she was replaced by someone substantially younger and whether SBISD's proffered reasons for her demotion were pretextual. Therefore, the trial court did not err when it denied the plea as to her age discrimination claim. SBISD's sole issue is overruled.

## III. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
11th day of March, 2021.

20