Martha Hill Jamison, Justice
This is an employment discrimination and retaliation case. In one issue, Metropolitan Transit Authority of Harris County, Texas (Metro) brings this interlocutory appeal challenging the trial court's denial of Metro's plea to the jurisdiction[1] based on Viola M. Douglas's purported failure, before filing this lawsuit, to exhaust administrative remedies for her retaliation claims in compliance with the Texas Commission on Human Rights Act (the Act).[2] Douglas moved to dismiss the appeal as moot, contending that she exhausted her administrative remedies after Metro filed its plea. We conclude that the appeal is not moot because there are live controversies between the parties, as discussed below, and therefore, we deny the motion to dismiss. We further conclude that governmental immunity has been waived as to the retaliation claims and Douglas was not required to exhaust her administrative remedies prior to asserting her retaliation claims in the trial court. Consequently, the trial court did not err in denying Metro's plea to the jurisdiction. We affirm.
Background
Douglas makes the following allegations in this lawsuit. Douglas is a lieutenant with the Metro Police Department. She applied *491 for one of two available captain positions in 2014, along with two male lieutenants. Metro was required under its procedures to use an outside agency to make competency assessments of all candidates for captain position vacancies. Instead of following that process, then Chief of Police Tim Kelly decided to use a five-person panel of Metro employees to conduct interviews of the candidates. The panel scored Douglas as the highest ranking candidate.
Kelly then interviewed the candidates and promoted both male candidates. Douglas was not promoted. According to Douglas, Kelly's decision not to promote her was based in part on the fact that Vera Bumpers had been selected to replace Kelly as Metro's first female Chief of Police and Kelly wanted to avoid promoting too many women to high ranking leadership roles within Metro.[3]
Douglas filed a discrimination charge with the Texas Workforce Commission Civil Rights Division (TWC) in March 2015.[4] After the requisite 180 days without a determination from the TWC, Douglas filed this lawsuit, bringing a gender discrimination claim in September 2015.[5]
Douglas filed an amended petition in July 2016 to add retaliation claims. She contends that in June 2015, after she filed her discrimination charge, Bumpers asked Douglas's former supervisor to lower her performance rating. When the former supervisor refused to do so, Bumpers reassigned Douglas to report to a captain who was promoted instead of her.
In July 2016, Bumpers refused to sign the "distinguished" performance evaluation of Douglas written by Douglas's new supervisor. Bumpers instructed the new supervisor to lower his performance rating of Douglas, which he did. Thus, Douglas's rating was lower than all six male lieutenants. Before the discrimination charge was filed, Douglas consistently had been rated as "distinguished."
Metro filed its plea to the jurisdiction requesting the trial court to dismiss the retaliation claims for failure to exhaust administrative remedies, which the trial court denied. Thereafter, in February 2017, Douglas again amended her petition, stating that she had filed a charge alleging retaliation on December 19, 2016 and the TWC had issued a notice of dismissal and right to sue letter; thus, she contends that her administrative remedies were exhausted.
Discussion
In its sole issue, Metro argues that the trial court erred in denying the plea to the jurisdiction as to Douglas's retaliation claims because Douglas failed to exhaust her administrative remedies before bringing those claims. Douglas moved to dismiss the appeal as moot because she filed her *492 retaliation charge with the TWC before the appeal was filed.
As a governmental unit, Metro is immune from suit absent an express waiver of governmental immunity. Harris Cnty. Hosp. Dist. v. Parker , 484 S.W.3d 182, 191 (Tex. App.-Houston [14th Dist.] 2015, no pet.) ; see also Kosoco, Inc. v. Metro. Transit Auth. of Harris Cnty. , No. 01-14-00515-CV, 2015 WL 4966880, at *6 (Tex. App.-Houston [1st Dist.] Aug. 20, 2015, no pet.) (mem. op.) (acknowledging that Metro is a governmental entity). The Act provides a limited waiver of that immunity when a governmental unit has discriminated in any manner against any employee on the basis of age, sex, or other protected classification, or has retaliated against the employee for opposing or complaining of such discrimination. Parker , 484 S.W.3d at 191 (citing Tex. Lab. Code §§ 21.051 and 21.055 and Mission Consol. Indep. Sch. Dist. v. Garcia , 253 S.W.3d 653, 660 (Tex. 2008) (holding that "the [Act] clearly and unambiguously waives immunity") ).
The Act's immunity waiver applies only if the plaintiff alleges a violation within the scope of the statute. Id. If the plaintiff does not sufficiently plead facts that state a claim under the Act, the governmental unit may challenge the pleadings with a plea to the jurisdiction. Id. The governmental unit may also use a plea to the jurisdiction to challenge the existence of jurisdictional facts. Id.
When a plea to the jurisdiction challenges the plaintiff's pleadings, we determine whether the pleadings, construed in the plaintiff's favor, allege facts sufficient to affirmatively demonstrate the trial court's jurisdiction to hear the case. Id. (citing Tex. Dep't of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 226 (Tex. 2004) ). If the plaintiff pleaded facts making out a prima facie case and the governmental unit instead challenges the existence of jurisdictional facts, we consider the relevant evidence submitted. Id. We review a trial court's ruling on a plea to the jurisdiction de novo. Id. at 192. When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the plaintiff. Id. We indulge every reasonable inference and resolve any doubts in the plaintiff's favor. Id.
Because the legislature intended for state law to correlate with federal law in employment discrimination cases, we may look to analogous federal cases when applying the Act. Id. (citing Tex. Lab. Code § 21.001 and Wal-Mart Stores, Inc. v. Canchola , 121 S.W.3d 735, 739 (Tex. 2003) ). The legislature has mandated that all statutory prerequisites to suit are jurisdictional requirements in suits against governmental entities. Prairie View A & M Univ. v. Chatha , 381 S.W.3d 500, 510 (Tex. 2012) (citing Tex. Gov't Code § 311.034 ). The Act requires a person claiming to be aggrieved by an unlawful employment practice to file a complaint with TWC within 180 days of the alleged unlawful employment practice. Tex. Lab. Code § 21.201(a), (g). Accordingly, filing a timely complaint with the TWC is a jurisdictional prerequisite to filing suit for unlawful employment practices against a governmental entity. Chatha , 381 S.W.3d at 511-12, 514 ; see also Tex. Dep't of Transp. v. Esters , 343 S.W.3d 226, 231 (Tex. App.-Houston [14th Dist.] 2011, no pet.).[6]
*493 I. Did filing the retaliation charge moot the appeal?
We first address whether the appeal is moot because Douglas filed a retaliation charge and, as she asserts, exhausted her administrative remedies. See Kessling v. Friendswood Indep. Sch. Dist. , 302 S.W.3d 373, 384 n.9 (Tex. App.-Houston [14th Dist.] 2009, pet. denied) (explaining that courts lack subject-matter jurisdiction over a moot claim). Metro argues that the appeal is not moot because Douglas did not cure fatal jurisdictional deficits, in that (1) Douglas waited until December 16, 2016 to file her complaint as to retaliation and thus it was untimely as to any actions taken before June 22, 2016; and (2) the retaliation claims are not an actionable employment action for which Metro's governmental immunity has been waived, and thus even if Douglas's administrative remedies had been exhausted, the trial court still lacks jurisdiction over the claims.[7]
An appeal is moot when there is no longer a live controversy between the parties and appellate relief would be futile. Rice v. Rice , 533 S.W.3d 58, 61 (Tex. App.-Houston [14th Dist.] 2017, no pet.). Stated differently, a case is moot when the court's action on the merits cannot affect the parties' rights or interests. Id. (citing Heckman v. Williamson Cnty. , 369 S.W.3d 137, 162 (Tex. 2012) ); see also City of Farmers Branch v. Ramos, 235 S.W.3d 462, 469 (Tex. App.-Dallas 2007, no pet.) ("The mootness doctrine dictates that courts avoid rendering advisory opinions by only deciding issues that present a 'live' controversy at the time of the decision.").
In this case, there are live controversies between the parties about the timeliness of Douglas's retaliation charge and whether Douglas's retaliation claims constitute actionable adverse employment actions under the Act. Thus, this appeal is not moot. We accordingly deny Douglas's motion to dismiss. See Rice , 533 S.W.3d at 61.
II. Are the retaliation claims based on materially adverse employment actions for which governmental immunity has been waived?
We turn to whether Douglas has alleged materially adverse employment actions. Metro argues that in failing to do so, Douglas did not make out a prima facie case of retaliation and thus cannot establish the trial court's jurisdiction.[8]
The Legislature has waived immunity only for those suits in which the plaintiff pleads facts that state a prima facie case under the Act. Garcia , 372 S.W.3d at 636 ; Rosenberg v. KIPP, Inc. , 458 S.W.3d 171, 175 (Tex. App.-Houston [14th Dist.] 2015, pet. denied). The Act makes retaliation for certain protected activities actionable.
*494 Metro. Transit Auth. of Harris County v. Ridley ,540 S.W.3d 91, 98-99, (Tex. App.-Houston [1st Dist.] 2017, pet. denied).[9] To make a prima facie showing of retaliation, a plaintiff must show, among other things, that an adverse employment action occurred. Navy v. Coll. of the Mainland , 407 S.W.3d 893, 900 (Tex. App.-Houston [14th Dist.] 2013, no pet.).
An adverse employment action in the context of a retaliation claim is not limited to conduct that constitutes ultimate employment decisions.[10] Id. at 901. Actionable conduct includes any actions that a reasonable employee would find materially adverse. Id. In other words, such conduct includes those actions that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White , 548 U.S. 53, 64-68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (addressing legal standard under federal statute upon which the Act is based as to retaliation claims). This objective standard is fact specific "because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." Navy , 407 S.W.3d at 900.
A court can consider the following factors in deciding whether an employer's actions were materially adverse as to a retaliation claim: (1) the effect the act had on the employee's prestige; (2) the effect the act had on the employee's opportunity for advancement; (3) the effect the act had on the employee's pay; (4) the effect the act had on the employee's core job duties; and (5) the effect the act had on the employee's ability to obtain outside employment. Adeshile v. Metro. Transit Auth. of Harris Cnty. , No. 14-12-00980-CV, 2014 WL 3734140, at *2 (Tex. App.-Houston [14th Dist.] Jan. 16, 2014, pet. denied) (mem. op.) (citing Montgomery Cnty. v. Park , 246 S.W.3d 610, 615-16 (Tex. 2007), in which the Texas Supreme Court adopted the Burlington standard with modifications in the context of Texas Whistleblower Act) ). The presence or absence of any of these factors is not dispositive because the effect of a challenged action must be considered as a whole in light of all the circumstances. Id.
Metro asserts that Douglas's retaliation allegations are not materially adverse employment actions.[11] However, under *495 the Montgomery County standard, we must objectively evaluate the reviews to determine whether, under the circumstances, they constitute materially adverse employment actions. See ids="8388789" index="32" url="https://cite.case.law/sw3d/246/610/#p615">id. A downgrade of an employee's performance evaluation may constitute an adverse employment action if it might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Davis v. Dallas Indep. Sch. Dist. , 448 Fed.Appx. 485, 494 (5th Cir. 2011).
Here, Douglas alleges that (1) after she filed her discrimination complaint Bumpers ordered Douglas's supervisor to lower her "distinguished" performance evaluation to the lowest evaluation among seven lieutenants; and (2) "[p]erformance evaluations are used in making promotional decisions and a lowered performance evaluation could be the defining basis as to why or why not a candidate is or is not promoted." Douglas further alleges that her supervisor had given her a "distinguished" ranking in four out of eight categories, and Bumpers refused to sign that evaluation until it was changed to take away Douglas's "distinguished" ranking in all categories. In the three prior years, Douglas had received seven and eight out of eight "distinguished" rankings.
These alleged actions implicate at least two of the above factors-lowering Douglas's prestige and reducing Douglas's opportunities for advancement.[12] Accepting the factual allegations in Douglas's live petition as true and construing them in the light most favorable to Douglas, we conclude that Douglas's allegations can support retaliation claims because Bumpers' actions, as alleged, "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[13] See itation index="34" url="https://cite.case.law/citations/?q=448%20Fed.%20Appx.%20485">id. (acknowledging that downgrading performance evaluations can be adverse employment actions for purposes of retaliation claims); see also Robin v. City of Frisco, Tex. , No. 4:16-CV-00576, 2017 WL 5483883, at *9 (E.D. Tex. Nov. 15, 2017) (holding that issuing a negative performance evaluation after plaintiff brought a discrimination complaint could support a retaliation claim).
III. Was Douglas required to exhaust her administrative remedies?
Douglas argues she was not required to exhaust her administrative remedies because the trial court has ancillary jurisdiction over retaliation claims that grow out of an earlier discrimination charge under *496 Gupta v. E. Tex. State Univ. , 654 F.2d 411, 414 (5th Cir. 1981). Metro argues that the so-called Gupta exception was abrogated by the Supreme Court's decision in Nat'l R.R. Passenger Corp. v. Morgan , 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), and even if it were not, Douglas's retaliation claims did not grow out of her discrimination charge.
Gupta still applicable post- Morgan . In Gupta , the Fifth Circuit created an exception to the exhaustion requirement for claims asserting retaliation for filing an EEOC complaint. 654 F.2d at 413-14. In that case, the plaintiff filed an EEOC charge alleging discrimination. Id. at 412. He then filed a second charge alleging he had been retaliated against for filing the first charge. Id. at 413. The EEOC issued a right to sue letter on the first charge and subsequently on the second charge. Id. After Gupta filed suit, he was told that his contract would not be renewed. Id. He did not file a third EEOC charge but alleged in his lawsuit that the nonrenewal was in retaliation for filing the first two EEOC charges. Id. The Fifth Circuit held that the exhaustion requirement did not bar the retaliation claim and noted that additional EEOC filings based on events after a lawsuit was filed "would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII ... especially since the EEOC relies largely upon the private lawsuit to obtain the goals of Title VII."[14] Id. at 414. The court concluded, "[I]t is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." Id. at 414 ; see also Cooper v. Wal-Mart Transp., LLC , 662 F.Supp.2d 757, 774-75 (S.D. Tex. 2009).
Metro argues that Gupta has been abrogated by Morgan . In Morgan , the Supreme Court held that Title VII plaintiffs could not use a "continuing violation" theory to assert claims that were based on employer acts outside the 300-day statutory window for filing an EEOC charge, thus overturning the Ninth Circuit's prior holding that courts could consider conduct that ordinarily would be time barred as long as the untimely incidents represented an ongoing unlawful employment practice. 536 U.S. at 106-07, 113-14, 122 S.Ct. 2061.
Some courts in other jurisdictions have extended the reasoning in Morgan to include not only acts that occurred more than 300 days before the EEOC charge was filed, but any acts that occurred after the EEOC charge was filed. See e.g., Martinez v. Potter , 347 F.3d 1208, 1210-11 (10th Cir. 2003) ; McKenzie v. St. Tammany Parish Sch. Bd. , No. 04-0420, 2006 WL 2054391, at *2-3 (E.D. La. Jul. 19, 2006).[15] And others have held that administrative remedies must be exhausted for claims of retaliation based on an earlier filed EEOC charge that is already properly before the court. See e.g., Prince v. Rice , 453 F.Supp.2d 14, 23-24 (D.D.C. 2006) ;
*497 Romero-Ostolaza v. Ridge , 370 F.Supp.2d 139, 148-50 (D.D.C. 2005). But this court has continued to apply Gupta after Morgan . See Parker, 484 S.W.3d at 193 ("[T]here is an exception to the exhaustion requirement when a retaliation claim grows out of a previously filed ... charge. In that circumstance, the plaintiff is not required to amend his charge or file a second charge.") (citations omitted). However, we have not directly addressed whether the holding in Morgan abrogated the Gupta exception.
The U.S. District Court for the Southern District of Texas addressed the issue and held that the high court's pronouncement in Morgan does not broadly require lower courts to extend the exhaustion requirement to acts that occurred after the EEOC charge is filed. Cooper , 662 F.Supp.2d at 775. The Fourth Court of Appeals in San Antonio similarly held. See San Antonio Water Sys. v. Odem , No. 04-07-00130-CV, 2007 WL 2376147, at *2 (Tex. App.-San Antonio Aug. 22, 2007, no pet.) (mem. op.) (" Morgan is distinguishable from Gupta because in Morgan , the court applied the Title VII limitations period to pre -charge retaliatory acts and held those acts time-barred, whereas in Gupta , the court addressed the viability of post -charge retaliatory acts that grew out of an earlier charge.").
Metro argues that the Fifth Circuit has "indicated that Morgan abrogated the Gupta exception," citing Heath v. Board of Supervisors for Southern University & Agricultural & Mechanical College , 850 F.3d 731, 741-42 (5th Cir. 2017), Simmons-Myers v. Caesars Entertainment Corp. , 515 Fed.Appx. 269, 273 n.1 (5th Cir. 2013), and Sapp v. Potter , 413 Fed.Appx. 750, 752 n.2 (5th Cir. 2011). We disagree.
In Heath , the Fifth Circuit merely acknowledged that a "retaliation claim based on discrete acts cannot rely on a continuing violation theory" under Morgan . 850 F.3d at 741 (emphasis added) (citing Morgan , 536 U.S. at 105, 113, 122 S.Ct. 2061 ). Heath had filed a lawsuit in state court alleging sex discrimination, among other things. Id. at 735. When she stopped pursuing that lawsuit, it was dismissed. Id. Four years later, Heath filed an EEOC charge alleging a hostile work environment as well as retaliation for the state court lawsuit. Id. The court affirmed the trial court's dismissal of Heath's retaliation claim because the purported retaliation occurred more than 300 days before Heath filed her EEOC charge. Id. at 741-42. The court did not address the continuing viability of the Gupta exception, which is applicable only to retaliation claims growing out of an earlier discrimination charge filed with the EEOC. 654 F.2d at 413. In Simmons-Myers and Sapp , the court expressly declined to address whether Gupta is still applicable post- Morgan , so the Fifth Circuit has yet to address that issue. Simmons-Myers , 515 Fed.Appx. at 273 n.1 ; Sapp , 413 Fed.Appx. at 752 n.2.
Metro also cites Skaggs v. Van Alstyne Independent School District , No. 4:16-CV-00227-CAN, 2017 WL 77825, at *6 (E.D. Tex. Jan. 9, 2017), for the proposition that "the continuing violation doctrine does not apply to discrimination and/or retaliation claims" under Morgan . We agree. But the Gupta exception does not involve the continuing violation doctrine: it involves retaliation claims that grow out of an earlier discrimination charge. 654 F.2d at 413. No mention of Gupta is made in the Skaggs opinion.
Metro further argues that public policy favors the abrogation of Gupta because deferral of all charges of employment discrimination to administrative agencies protects the agency's authority and promotes judicial efficiency. See Morgan , 536 U.S. at 108, 122 S.Ct. 2061 ("[S]trict adherence to the procedural requirements specified by the legislature is the best guarantee of *498 evenhanded administration of the law."); see also Gilbert v. Tex. Dep't of Criminal Justice , 490 S.W.3d 598, 605 (Tex. App.-Houston [1st Dist.] 2016, no pet.) (noting administrative exhaustion rules "protect an administrative agency's authority by giving the agency the first opportunity to resolve a controversy before a court intervenes in the dispute" and "promote judicial efficiency by either resolving the dispute outside of the courts, or by producing a factual record that can aid the court in processing a plaintiff's claim").
But we find the policy behind Gupta to be equally compelling, as articulated in the opinion:
It is the nature of retaliation claims that they arise after the filing of the EEOC charge. Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case[,] a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII. We are reluctant to erect a needless procedural barrier to the private claimant under Title VII, especially since the EEOC relies largely upon the private lawsuit to obtain the goals of Title VII. Intertwined with this practical reason for our holding is a strong policy justification. Eliminating this needless procedural barrier will deter employers from attempting to discourage employees from exercising their rights under Title VII.
654 F.2d at 414 (citations omitted); see also Martin v. Eli Lilly & Co. , No. 1:12-CV-1623-CAP, 2014 WL 11822758, at *4 (N.D. Ga. Sept. 22, 2014) (noting self-evident policy justifications for permitting "a related, after-occurring incident of retaliation [to] be included within the scope of [an earlier-filed] administrative complaint").
We find the Fourth Circuit's opinion in Jones v. Calvert Group, Limited to be instructive: "Although [the defendant] asserts that Morgan required [the plaintiff] to file a new EEOC charge alleging that she was terminated in retaliation for her first charge, we do not read Morgan that broadly." 551 F.3d 297, 303 (4th Cir. 2009). The Jones court noted that Morgan addresses only when the limitations clock for filing an EEOC charge begins ticking with regard to discrete unlawful employment practices. Id. It does not address the extent to which an EEOC charge satisfies exhaustion requirements for claims of related post-charge events. Id.
We agree with the reasoning in Cooper and Jones . As discussed, Morgan does not address retaliation claims that grow out of a discrimination charge. And there are strong pragmatic reasons not to extend the holding in Morgan , for example, to avoid creating needless procedural barriers to a claimant bringing a retaliation claim that grows out of a discrimination charge and to deter employers from discouraging employees from exercising their rights under Title VII or the Act. See Gupta , 654 F.2d at 414. We join the many courts that have declined to extend the holding in Morgan to envelop retaliatory acts growing out of an earlier filed EEOC charge.
Retaliation Claims Grow Out of Discrimination Charge . We turn to Metro's argument that Douglas's retaliation claims did not grow out of her discrimination claims. Metro asserts that Douglas's retaliation claims are not factually related to her discrimination charge and thus could not have grown out of her discrimination charge.
The Fifth Circuit articulated a straightforward standard in Gupta for determining when a retaliation claim grows out of a discrimination charge: when the plaintiff claims that the defendant retaliated *499 against her for filing a discrimination charge. 654 F.2d at 413-14. Thus, the standard implicates retaliation that occurs in response to the filing of a discrimination charge. Fischer v. Donahoe , No. 3:15-CV-0881-D, 2016 WL 1028127, at *2 (N.D. Tex. Mar. 15, 2016). Under Gupta , the plaintiff is allowed to raise a new claim for retaliation in the district court when it grows out of an administrative charge that is properly before the court. 654 F.2d at 414. In other words, retaliation that occurs in response to the filing of an administrative charge can be included in the lawsuit without filing a new charge alleging retaliation. Fischer , 2016 WL 1028127, at *2. There is no additional requirement as long as the retaliation stems from the discrimination alleged in the earlier administrative charge. See Gupta , 654 F.2d at 414.
The cases cited by Metro do not address retaliation claims that occur after the filing of an administrative charge. Rather, they address the proper scope of a discrimination or retaliation suit based on allegations in the administrative charge. See Lopez v. Tex. State Univ. , 368 S.W.3d 695, 701 (Tex. App.-Austin 2012, pet. denied) ("It is well settled that the scope of Title VII and ... litigation [under the Act] is limited to claims that were included in the administrative charge of discrimination and to factually related claims that could reasonably be expected to grow out of the agency's investigation of the claims stated in the charge."); see also Fine v. GAF Chem. Corp. , 995 F.2d 576, 577-78 (5th Cir. 1993).
The Lopez case involved retaliation claims that occurred before the administrative charge was filed. 368 S.W.3d at 699 (involving retaliation for filing reduction of pay grievance with employer). The administrative charge was timely filed; thus, the sole issue on appeal was whether discrimination and retaliation claims alleged in the plaintiff's lawsuit fell within the scope of the charge. Id. at 701. The allowable scope of the litigation was limited to claims that were included in the charge "and to factually related claims." Id. The court expressly declined to apply Gupta because the alleged retaliation occurred before the filing of the administrative charge. Id. at 705-06. The Fine case similarly stands for the unremarkable proposition that the scope of a Title VII suit is limited to the scope of the EEOC investigation that "could reasonably grow out of an administrative charge." 995 F.2d at 578.
Douglas alleges that Bumpers retaliated against Douglas for filing a discrimination charge. Accordingly, Douglas has alleged, under Gupta , that her retaliation claims grew out of her discrimination charge. See 654 F.2d at 414. She was not required to allege anything further.
Conclusion
We conclude that this appeal is not moot. We further conclude that Douglas has alleged materially adverse employment actions and she was not required to exhaust her administrative remedies as to her retaliation claims. Consequently, the trial court did not err in denying Metro's plea to the jurisdiction. We affirm.

See Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (allowing interlocutory appeal from trial court's grant or denial of a plea to the jurisdiction by a governmental unit).

Tex. Lab. Code §§ 21.001 -.556. Under the Act, "[a]n employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer ... discharges an individual or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." Id. § 21.051. Section 21.051 is effectively identical to its federal equivalent, Title VII of the Civil Rights Act of 1964, except that Title VII does not protect against age and disability discrimination. Mission Consol. Indep. Sch. Dist. v. Garcia , 372 S.W.3d 629, 633 (Tex. 2012). Those forms of discrimination are addressed in separate statutes. Id. Because one of the purposes of the Act is to "provide for the execution of the policies of Title VII," Texas courts have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the Act. Id. at 633-34 (citing Tex. Lab. Code § 21.001(1) ).

Kelly was promoted to Executive Vice President of Metro.

It is not clear from the record whether the charge was filed only with the TWC or also with the Equal Employment Opportunity Commission (EEOC). It may have been filed with the TWC and presented to the EEOC, but we need not draw a distinction for purposes of our analysis. See Prairie View A & M Univ. v. Chatha , 381 S.W.3d 500, 504 n.4 (Tex. 2012) ("A claimant may file a complaint with either the EEOC, the federal agency authorized to investigate charges of discrimination, or the TWC, the Texas equivalent.") (citing 42 U.S.C. § 2000e-5(e)(1) ; Tex. Lab. Code §§ 21.201 -.202; 40 Tex. Admin. Code. § 819.41(c) ).

A plaintiff must allow the TWC 180 days to dismiss or resolve the complaint before filing suit. Tex. Dep't of Aging & Disability Servs. v. DeLong , 441 S.W.3d 538, 541 (Tex. App.-El Paso 2014, pet. denied) (citing Tex. Lab. Code § 21.208 ).

Alternatively, the complaint may be filed with the EEOC. Chatha , 381 S.W.3d at 504 n.4. Other requirements under the Act to exhaust administrative remedies are to (1) allow the TWC 180 days to dismiss or resolve the complaint, and (2) file suit in district court within 60 days of receiving a right-to-sue letter from the TWC and no later than two years after the complaint. Tex. Lab. Code §§ 21.208, .254, .256; see also Lopez v. Tex. State Univ. , 368 S.W.3d 695, 701 (Tex. App.-Austin 2012, pet. denied).

Because we conclude that Douglas was not required to exhaust her administrative remedies, as discussed below, we need not parse the retaliation claims based on when they occurred.

This argument was not raised below, but we address it since it implicates the trial court's jurisdiction. See Rusk State Hosp. v. Black , 392 S.W.3d 88, 94-95 (Tex. 2012) (holding that immunity from suit is an issue of subject matter jurisdiction that may be raised for the first time on interlocutory appeal).

See Tex. Lab. Code § 21.055 (making retaliation actionable for opposing a discriminatory practice; making or filing a charge; filing a complaint; or testifying, assisting, or participating in an investigation, proceeding, or hearing).

Generally, ultimate employment decisions involve hiring, granting leave, discharging, promoting, and compensation, but not events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee-anything which might jeopardize employment in the future. Navy , 407 S.W.3d at 899.

The cases cited by Metro either are distinguishable or were decided before the Supreme Court's decision in Burlington , in which the high court set forth the standard for materially adverse employment actions in the context of retaliation claims: "which in this context means [the action] well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." 548 U.S. at 68, 126 S.Ct. 2405. The Burlington court rejected standards previously applied in courts of appeals, including the Fifth Circuit, that "treated the antiretaliation provision as forbidding the same conduct prohibited by the antidiscrimination provision and that have limited actionable retaliation to so-called 'ultimate employment decisions.' " Id. at 67, 126 S.Ct. 2405. The first case cited by Metro deals with negative peer evaluations, which are not at issue here and are not performance reviews. See Navy , 407 S.W.3d at 902 (holding a negative peer evaluation would not deter a reasonable victim of discrimination from complaining and thus was not a materially adverse action). The other cases either were decided before Burlington or relied on cases decided before Burlington . See Dupont-Lauren v. Schneider (USA), Inc. , 994 F.Supp. 802, 824 (S.D. Tex. 1998) (decided before Burlington ); Elgaghil v. Tarrant Cnty. Junior Coll., 45 S.W.3d 133, 142 (Tex. App.-Fort Worth 2000, pet. denied) (same); see also Univ. of Tex. at El Paso v. Esparza , 510 S.W.3d 147, 160 (Tex. App.-El Paso 2016, no pet.) (stating in dicta that poor performance reviews, among other things, do not constitute actionable adverse employment decisions and citing a case decided before Burlington ).

Douglas does not address in her pleading or her response to the plea whether these actions would affect her pay, core job duties, or ability to obtain outside employment.

Metro argues for the first time in its reply brief that Douglas filed a grievance regarding her performance rating that was resolved in her favor and thus Metro's actions were not materially adverse. Arguments raised for the first time in a reply brief are waived. QTAT BPO Sols., Inc. v. Lee & Murphy Law Firm, G.P. , 524 S.W.3d 770, 779 (Tex. App.-Houston [14th Dist.] 2017, pet. filed). Moreover, Metro has not established how resolving a grievance in a worker's favor, standing alone, demonstrates that a reasonable worker would not have been dissuaded from making or supporting a charge of discrimination. Metro cites Adeshile , 2014 WL 3734140, at *3, but in that case the plaintiff failed to produce evidence at trial to support her allegation that she was denied a promotion.

We look to federal law in interpreting the Act and correlate the Act with Title VII when possible. See Chatha , 381 S.W.3d at 507. We have applied the holding in Gupta in cases that involve application of the Act. See, e.g., Parker , 484 S.W.3d at 193.

Metro cites additional cases from the Third and Eighth Circuits with similar holdings but acknowledges that the Fourth Circuit has held the opposite. Compare Green v. Postmaster Gen. of U.S. , 437 Fed.Appx. 174, 178 (3d Cir. 2011), and Wedow v. City of Kansas City, Mo. , 442 F.3d 661, 674 (8th Cir. 2006) ; with Jones v. Calvert Group, Ltd. , 551 F.3d 297, 304 (4th Cir. 2009).