**Reversed and Rendered and Memorandum Opinion filed July 20, 2023.**



**In The**

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

### NO. 14-22-00008-CV

**HARRIS COUNTY DEPARTMENT OF EDUCATION, Appellant**

**V.**

**KEITH MONTGOMERY, Appellee**

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-71661**

## MEMORANDUM OPINION

In this interlocutory appeal, appellant Harris County Department of Education ("HCDE") appeals the denial of its plea to the jurisdiction in the lawsuit filed by appellee Keith Montgomery ("Montgomery"). *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.104(a)(8) (authorizing interlocutory appeal from an order that grants or denies a plea to the jurisdiction filed by a governmental unit). In nine issues we have reorganized, HCDE argues that: (1) Montgomery cannot establish a prima facie case of race discrimination or retaliation; (2) Montgomery's retaliation

allegations prior to January 4, 2018, are time barred; (3) Montgomery cannot establish that HCDE's proffered reasons for his termination were a pretext for retaliation; (4) Montgomery's claim under the Texas Whistleblower Act ("TWA") is barred due to Montgomery's failure to exhaust his administrative remedies; (5) Montgomery cannot establish a prima facie case for his claim under the TWA; (6) Montgomery abandoned his constitutional claims at the trial court; (7) Montgomery's constitutional claims are barred because Montgomery failed to exhaust his administrative remedies; (8) Montgomery cannot establish the elements of his equal protection claim; and (9) Montgomery cannot establish the elements of his due course of law claim.[1] We reverse the trial court's order and render judgment granting HCDE's plea to the jurisdiction and dismissing Montgomery's case for want of subject-matter jurisdiction.

## I. BACKGROUND

On May 9, 2017, while employed as an assistant principal at High Point East Middle School for HCDE, Montgomery was involved in a physical altercation with a student. Montgomery alleged he was injured in the altercation, filed a criminal charge against the student, and sought to recover benefits from HCDE as a result of the incident. However, HCDE concluded that Montgomery instigated the altercation and disciplined Montgomery, denied his request for assault leave, forcing him to use twenty-four days of sick leave, and opposed his request for workers' compensation benefits.

---

[1] In his brief, Montgomery asserts two points: (1) HCDE did not have administrative, subject-matter jurisdiction to vote to non-renew Montgomery's contract; and (2) Montgomery was shielded by legislative immunity under Texas Penal Code § 9.62. However, Montgomery did not file a notice of appeal, and thus, did not properly invoke this court's jurisdiction. *See* Tex. R. App. P. 25.1(c) ("A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal."). Therefore, Montgomery's points are not properly before this court.

On June 16, 2017, Montgomery filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"),[2] alleging race discrimination and retaliation by HCDE when it denied Montgomery's workers' compensation claim. Montgomery alleged that: (1) because he opposed HCDE's discrimination of Maria Elena McLean ("McLean"), another employee, based on McLean's age and disability, HCDE retaliated against him by denying his workers' compensation claim; and (2) regarding Montgomery's altercation with the student, the school's principal allowed the investigating officer's "false view [that Montgomery provoked the attack] to damage [Montgomery's] health and career because of [his] race." Montgomery also alleged that he filed a criminal charge against the student and was told by Harris County Deputy Sheriff David Gilbert that if he "insisted on filing the charge, then charges would be filed against [him]." On August 10, 2017, the EEOC issued Montgomery a right to sue letter, stating that it closed Montgomery's charge because "[t]he facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC."

On October 2, 2017, Montgomery filed a lawsuit against HCDE, asserting claims for violations of Texas Labor Code Chapter 21, Texas Government Code § 554.002, and the Texas Constitution. Montgomery subsequently amended his petition and added a claim for a violation of the TWA. On October 23, 2017, Montgomery filed a charge of discrimination with the Texas Workforce Commission ("TWC"), alleging that HCDE retaliated against him by denying him "benefits of law," workers' compensation benefits, and assault leave.

When Montgomery returned to work on January 4, 2018, he was reprimanded, placed on a performance improvement plan, and reassigned to a high

---

[2] "A claimant may file a complaint with either the EEOC, the federal agency authorized to investigate charges of discrimination, or the TWC, the Texas equivalent." *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 504 n.4 (Tex. 2012).

school. On February 9, 2018, Montgomery sent an email to HCDE's board of trustees noting his concerns regarding the high school and included "34 anecdotes [from school staff and students] of events about which he had learned after being reassigned to the High School." HCDE requested that Montgomery provide the names of staff and students referred to in his email within four days, but Montgomery did not.

Montgomery received a written reprimand due to his failure to comply with an official directive. On February 23, 2018, Montgomery filed a level one grievance form with HCDE alleging that as a result of his filing of a discrimination charge with the EEOC, the filing of his lawsuit against HCDE, and his report of "HCDE's complicity or facilitation in the illegal activities," he was retaliated against by the written reprimand. Montgomery subsequently filed a level two grievance, which resulted in the hearing officer adopting the level-one decision that there was no evidence of retaliation and that the facts showed that the written reprimand "was entirely based on Mr. Montgomery's failure to comply with a written administrative directive and was not retaliatory or unfair." Montgomery then filed a level-three grievance.

On May 17, 2018, HCDE's board of trustees sent a letter to Montgomery informing him that it was recommending that his term contract not be renewed because of his failure to follow his supervisor's directives. *See* Tex. Labor Code Ann. § 21.206. On July 31, 2018, the board granted Montgomery's level three grievance and his requested relief by removing the written reprimand from his personnel file. On August 20, 2018, an independent hearing examiner upheld HCDE's decision not to renew Montgomery's contract. Montgomery did not appeal the independent hearing examiner's decision to the Commissioner of Education.

On July 3, 2018, Montgomery filed a second charge of discrimination with the TWC, alleging race, color, and disability discrimination. Montgomery alleged that he was retaliated against for opposing racial and age discrimination against employees, opposing discrimination against McLean, opposing misconduct, making a criminal complaint against the student that assaulted him, and for filing his grievances, his appeals, and his lawsuit.

On April 13, 2021, HCDE filed its third amended plea to the jurisdiction, arguing that Montgomery failed to exhaust his administrative remedies concerning his Chapter 21 claims; Montgomery's retaliation claims fail as a matter of law; Montgomery's claim under the TWA is fatally flawed; and the trial court lacked subject-matter jurisdiction over Montgomery's claims under the Texas Constitution because he failed to exhaust his administrative remedies before seeking redress in the court. HCDE attached extensive evidence in support of its plea, including Montgomery's charges of discrimination filed with the EEOC and the TWC; HCDE's letter to Montgomery from May 17, 2018, informing him of the nonrenewal of his term contract; a copy of the independent hearing examiner's recommendation that Montgomery's term contract not be renewed; and Montgomery's level one and level two grievance forms and the decision from his level three grievance.

On December 21, 2021, Montgomery filed a combined fourth-amended petition and response to HCDE's plea to the jurisdiction. In his live pleading, Montgomery asserted a claim for violations of the TWA; retaliation, based on his termination under Chapter 21 of the Labor Code resulting from Montgomery's opposition to HCDE's discrimination against McLean; and claims for violations of the Texas Constitution article I, §§ 3 and 19. Montgomery's live pleading further stated that, "[w]hile Montgomery also filed a Charge for Discrimination based on

5

race and gender, and there is evidence to support those claims, Montgomery non-suits all but retaliation." Montgomery also attached extensive evidence in support of his response to HCDE's plea. Montgomery subsequently filed two supplements to his combined live petition and response to HCDE's plea to the jurisdiction, expanding on the pleaded factual statements.

On December 29, 2021, the trial court denied HCDE's plea to the jurisdiction. This interlocutory appeal followed.

## II.   DISCUSSION

In nine issues, HCDE argues that the trial court erred when it denied its plea to the jurisdiction as to Montgomery's claims.

### A.   STANDARD OF REVIEW

Governmental units, including school districts, are immune from suit unless the state waives immunity. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). Immunity from suit may be asserted through a plea to the jurisdiction that challenges the pleadings, the existence of jurisdictional facts, or both. *Id.*

A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject-matter jurisdiction. *Id.* Whether a trial court has subject-matter jurisdiction and whether the pleader has alleged facts that affirmatively demonstrate the trial court's subject-matter jurisdiction are questions of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

The plaintiff has the initial burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852

6

S.W.2d 440, 446 (Tex. 1993); *see Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). If the plaintiff pleaded facts making out a prima facie case and the governmental unit instead challenges the existence of jurisdictional facts, then we consider the relevant evidence submitted. *Metro. Transit Auth. of Harris Cty. v. Douglas*, 544 S.W.3d 486, 492 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *see Garcia*, 372 S.W.3d at 635.

When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the plaintiff. *Douglas*, 544 S.W.3d at 492; *see Garcia*, 372 S.W.3d at 635. We indulge every reasonable inference and resolve any doubts in the plaintiff's favor. *Douglas*, 544 S.W.3d at 492; *see Miranda*, 133 S.W.3d at 226. If the relevant evidence is undisputed or if the plaintiff fails to raise a fact question on the jurisdictional issue, then the trial court rules on the plea as a matter of law. *Garcia*, 372 S.W.3d at 635; *see Harris Cty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 798–99 (Tex. 2016) (op. on reh'g).

## B.   LABOR CODE CHAPTER 21

In its first three issues, HCDE argues the trial court erred by not dismissing Montgomery's retaliation claim under the Labor Code chapter 21 because (1) Montgomery cannot establish a prima facie case of retaliation;[3] (2) Montgomery's retaliation claim based on allegations prior to January 4, 2018, are time barred; and

---

[3] HCDE also argues in its first issue that it is "assuming for the sake of argument that Mongomery's [sic] did not nonsuit of his [sic] race discrimination claim is ineffective . . . ." Montgomery's live pleading states that he is nonsuiting all claims under the TCHRA except for his retaliation claim, and Montgomery's supplemental petitions expand on the factual statements underpinning his asserted claims. At oral argument before this court, Montgomery confirmed that the only issue on appeal concerning chapter 21 was his retaliation claim. Accordingly, we treat Montgomery's claims other than retaliation as voluntarily dismissed and we will not address this part of HCDE's first issue. *See* Tex. R. App. P. 47.1, 47.4.

(3) Montgomery cannot establish that HCDE's reasons for his termination were a pretext for retaliation.

### 1. APPLICABLE LAW

Labor Code chapter 21 prohibits retaliation by employers. Tex. Lab. Code Ann. §§ 21.001, 21.051, 21.055. An "employer" includes a county, municipality, state agency, or state instrumentality, regardless of the number of individuals employed. *Id.* § 21.002(8)(D). Because chapter 21 is modeled after federal civil rights law, we may look to analogous federal precedent for guidance. *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 446 (Tex. 2004); *see* Tex. Lab. Code Ann. § 21.001.

Chapter 21 "waives immunity, but only when the plaintiff states a claim for conduct that actually violates the statute." *Clark*, 544 S.W.3d at 770. Courts consider chapter 21 claims only after the plaintiff has exhausted his or her administrative remedies. *Hoffman-La Roche, Inc.*, 144 S.W.3d at 446; *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex. 1991), *overruled on other grounds by In re United Servs. Auto. Ass'n*, 307 S.W.3d 299 (Tex. 2010) (orig. proceeding).

To establish unlawful discrimination under chapter 21, a plaintiff may rely on either direct or circumstantial evidence. *Clark*, 544 S.W.3d at 782. A case based on circumstantial evidence is referred to as a "pretext" case. *See Quantum Chem. Co. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001) (per curiam). In a pretext case, the plaintiff's ultimate goal is to show that the employer's stated reason for the adverse action was a pretext for discrimination. *Id.*

When a plaintiff relies on circumstantial evidence to establish a discrimination claim, we follow the burden-shifting framework the United States

Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Flores*, 612 S.W.3d at 305; *Clark*, 544 S.W.3d at 764, 782. Under this framework: (1) the plaintiff must first create a presumption of illegal discrimination by establishing a prima facie case; (2) the defendant must then rebut that presumption by producing evidence of a legitimate, non-discriminatory reason for the employment action; and (3) the plaintiff must then overcome the rebuttal evidence by producing evidence that the defendant's stated reason is a mere pretext. *Flores*, 612 S.W.3d at 305; *Clark*, 544 S.W.3d at 782. If a plaintiff fails to establish a prima facie case against a governmental unit or overcome the rebuttal evidence, then the trial court lacks jurisdiction and must dismiss the case. *See Garcia*, 372 S.W.3d at 635; *Miranda*, 133 S.W.3d at 225–26.

## 2. RETALIATION

Because it is dispositive, we focus our analysis on HCDE's third issue, which argues that Montgomery cannot establish that HCDE's reasons for his termination were a pretext for retaliation.

Section 21.055 provides that an employer commits an unlawful employment practice if the employer retaliates against a person who, under chapter 21 of the Labor Code, "(1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding or hearing." Tex. Lab. Code Ann. § 21.055; *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 137 (Tex. 2015). To establish a prima facie case of retaliation, an employee must show: (1) he was engaged in an activity protected by chapter 21, (2) he experienced a material adverse employment action, and (3) a causal link exists between the protected activity and the adverse action. *Tex. Dep't of Trans. V. Lara*, 625 S.W.3d 46, 58 (Tex. 2021); *San Antonio Water Sys.*, 461 S.W.3d at 137.

9

### 3. ANALYSIS

In his live pleading, Montgomery alleged that HCDE retaliated against him by not renewing his contract because he advocated for a coworker, McLean, when HCDE allegedly discriminated against her based on her age and disability. Assuming, without deciding, that Montgomery established a prima facie case of retaliation, we nevertheless conclude the trial court erred when it denied HCDE's plea as to the retaliation claim because HCDE proffered legitimate reasons for the non-renewal of Montgomery's term contract that Montgomery failed to address.

HCDE's DFBB (Local) policy governing non-renewal of term contracts provides that reasons not to renew a contract include "[i]nsubordination and failure to comply with official directives." As part of its third issue, HCDE argues that it had legitimate reasons to terminate Montgomery because Montgomery failed to follow official directives, was insubordinate, and violated FERPA[4] by disclosing personally identifiable student information without parental consent. Here, the record shows that Montgomery was reprimanded for insubordination when he failed to follow a directive by HCDE's Senior Director of Schools that he respond to questions by a specific date.

Montgomery failed to challenge that the first of these two reasons—failure to follow official directives and insubordination—were a pretext for retaliation. Because Montgomery failed to raise a fact issue as to whether all of HCDE's proffered reasons for the non-renewal of his contract were a pretext for retaliation, we conclude that the trial court erred when it denied HCDE's plea as to

---

[4] "FERPA is a federal privacy law that withholds federal funding from institutions that have a 'policy or practice of permitting the release of education records . . . or personally identifiable information." *Hall v. McRaven*, 508 S.W.3d 232, 236 (Tex. 2017) (citing 20 U.S.C.A. § 1232g(b)(1)). FERPA stands for the Family Education Rights and Privacy Act. *Id.* at 234.

Montgomery's retaliation claim. *See, e.g.*, *Alief Indep. Sch. Dist. v. Brantley*, 558 S.W.3d 747, 760 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) ("Brantley did not point to evidence below that rebuts the evidence presented by AISD that Brantley failed to follow AISD's policies and procedures and engaged in insubordination and unprofessional conduct . . . ."); *Navy v. Coll. Of the Mainlan*, 407 S.W.3d 893, 900–01 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("To carry this burden, the plaintiff must rebut each non-discriminatory or nonretaliatory reason articulated by the employer." (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007))).

We sustain HCDE's third issue and conclude the trial court lacked subject-matter jurisdiction over Montgomery's retaliation claim.[5]

## C.    TEXAS WHISTLEBLOWER ACT

In its fourth and fifth issues, HCDE argues the trial court erred by not dismissing Montgomery's claim under the Texas Whistleblower Act ("TWA") because (4) the claim is barred for failure to exhaust administrative remedies, and (5) Montgomery cannot establish a prima facie case for his claim.

### 1.    APPLICABLE LAW

The TWA contains a waiver of immunity stating:

> A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter. Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter.

Tex. Gov't Code Ann. § 554.0035.

---

[5] Because HCDE's third issue is dispositive as to Montgomery's retaliation claim under chapter 21, we need not address HCDE's first and second issues. *See* Tex. R. App. P. 47.1, 47.4.

The TWA also contains certain prerequisites to suit, including a requirement to "initiate action under the [state or local government employer's] grievance or appeal procedures before suing." *See id.* § 554.006(a). "When a statutory prerequisite to suit is not met, 'whether administrative (such as filing a charge of discrimination) or procedural (such as timely filing a lawsuit),' the suit may be properly dismissed for lack of jurisdiction." *City of Madisonville v. Sims*, 620 S.W.3d 375, 378 (Tex. 2020) (per curiam) (quoting *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 515 (Tex. 2012)); *see* Tex. Gov't Code Ann. § 311.034. Section 554.006's requirement that an employee initiate a grievance or appeal pursuant to a governmental entity's procedure is to afford the governmental entity the opportunity to investigate and correct its errors and to resolve disputes before incurring the expense of litigation. *Fort Bend Indep. Sch. Dist. v. Gayle*, 371 S.W.3d 391, 395 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *Moore v. Univ. of Houston-Clear Lake*, 165 S.W.3d 97, 103 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

## 2. ANALYSIS

HCDE argues that Montgomery failed to invoke HCDE's grievance procedure for the alleged violation of the TWA. HCDE attached to its to its third amended plea to the jurisdiction an affidavit by its executive director of human resources, Natasha Truitt. In the affidavit, Truitt states that HCDE has an internal grievance procedure through which whistleblowers may file a grievance.

HCDE's policy was introduced into the record, and it provides:

Whistleblower complaints shall be filed within the time specified by law and may be made to the Superintendent or designee beginning at Level Two. Time lines for the employee and the Department set out in this policy may be shortened to allow the Board to make a final decision within 60 calendar days of the initiation of the complaint.

12

. . . .

Complaints under this policy shall be submitted in writing on a form provided by the Department.

To initiate action under HCDE's grievance procedure, HCDE's policy required Montgomery to submit his complaint in writing to HCDE in a form provided by HCDE. Because HCDE has a grievance procedure for whistleblower complaints, Montgomery was required to exhaust this procedure to obtain a waiver of HCDE's sovereign immunity as to his TWA claim. *See* Tex. Gov't Code Ann. §§ 554.0035, 554.006(a).

Montgomery argues that he satisfied this requirement by "expressing his intent to challenge the obstruction of his filing the assault charges . . . , and the retaliatory acts which arose from his efforts, in his [counsel's] June 26, 2017 letter to Superintendent Colbert, 12 days after HCDE's Natasha Truitt's first official response letter to Montgomery on June 14, 2017."

However, to initiate action under HCDE's grievance procedure, HCDE's policy required Montgomery to submit his complaint in writing to HCDE in a form provided by HCDE.[6] Accordingly, we conclude that Montgomery failed to exhaust his administrative remedies because he did not initiate HCDE's grievance procedure. *See Chatha*, 381 S.W.3d at 513–14 ("We have repeatedly affirmed that any purported statutory waiver of sovereign immunity should be strictly construed in favor of retention of immunity."); *see also Montgomery Cnty. Hosp. Dist. v. Smith*, 181 S.W.3d 844, 849 (Tex. App.—Beaumont 2005, no pet.) ("The MCHD's procedures do not require that the notice of an employee's appeal be made on a particular form or contain a particular language.").

---

[6] Additionally, the letter from Montgomery's counsel to the Superintendent did not include all of the information requested in HCDE's form. For example, HCDE's grievance form requests the address and telephone number of the employee as well as a dated signature from the employee.

Montgomery also argues that he was not required to comply with HCDE's grievance procedure so long as he gave fair notice of his intent to contest the adverse personnel actions. In support, Montgomery cites *Ward v. Lamar Univ.*, 484 S.W.3d 440, 447–48 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

In *Ward*, this court concluded that the employee gave adequate notice to the governmental entity employer of his desire to appeal the employer's personnel decision. *See id.* However, the governmental entity in *Ward* did not introduce the grievance policy in the trial court in support of its plea to the jurisdiction. *Id.* at 447. The court also noted that the policy that the governmental entity relied on in its appeal did not apply to administrative staff members, a class to which the employee belonged. *Id.* As such, this court concluded that a fact issue precluded the governmental entity's plea to the jurisdiction. *See id.* at 447–48 ("In the absence of a standard created by an employee manual detailing the required contents of a public employee's grievance or appeal, the notice given to an employer must provide fair notice that the employee desires to appeal the employer's personnel decision and fair notice of the decision made by the employer from which the employee desires to appeal.").

Because HCDE had an internal grievance procedure and Montgomery failed to comply with it, because Montgomery acknowledged in his deposition of the existence of this procedure, and because Montgomery did not argue that the procedure was inapplicable to employees like him, we reject Montgomery's reliance on *Ward*. Accordingly, we conclude that the trial court lacked subject-matter jurisdiction over Montgomery's TWA claim and erred when it did not grant HCDE's plea as to this claim. *See* Tex. Gov't Code Ann. §§ 554.0035, 554.006(a).

14

We sustain HCDE's fourth issue.[7]

### D.  TEXAS CONSTITUTION

In issues six through nine, HCDE argues the trial court erred in failing to dismiss Montgomery's claims based on the Texas Constitution because (6) Montgomery abandoned his constitutional claims at the trial court, (7) Montgomery's constitutional claims are barred because Montgomery failed to exhaust his administrative remedies, (8) Montgomery cannot establish the elements of his equal protection claim, and (9) Montgomery cannot establish the elements of his due course of law claim.

### 1.  Analysis

Montgomery's live pleading states the following in its entirety concerning his claims for violation of the Texas Constitution:

> **State Constitution, Article One Sections 3, 19**
>
> Unexplained, and or unreasonable failure of HCDE to comply with its own policies or state law is arbitrary and when it effects [sic] the negative impact of a tangible interest such asa [sic] career, or Assault Leave benefits, or Worker's Compensation benefits, or earned leave time, then it is aviolation [sic] of substantive due process and unconstitutional.
>
> Defendant violated [Texas Education Code §] 22.0512[8] and

---

[7] Because HCDE's fourth issue is dispositive as to Montgomery's TWA claim, we need not address HCDE's fifth issue. *See* Tex. R. App. P. 47.1, 47.4.

[8] Section 22.0512 is titled Immunity from Disciplinary Proceedings for Professional Employees and provides:

(a) A professional employee of a school district may not be subject to disciplinary proceedings for the employee's use of physical force against a student to the extent justified under Section 9.62, Penal Code.

(b) In this section, "disciplinary proceeding" means:

(1) an action brought by the school district employing a professional employee of a school district to discharge or suspend the employee or terminate or not renew the employee's

15

rendered discipline to Montgomery as a result of the events of May 9, 2017 which were and are proscribed [sic] by law.

Montgomery seeks a show cause order requiring Defendant to appear and show cause why he should not be reinstated with all attendant benefits (non damage) by a Temporary Mandatory Injunction for violating [Texas Education Code §] 22.0512.

Section three of article I of the Texas Constitution addresses equal protection and section nineteen addresses protection from unreasonable searches and seizures. *See* Tex. Const. art. I, §§ 3, 19.

### a. Nonrenewal of Contract

A school employee may appeal to the Commissioner of Education if the person is aggrieved by actions or decisions of any school district board of trustees that violate (1) the school laws of this state; or (2) a provision of a written employment contract between the school district and a school district employee, if a violation causes or would cause monetary harm to the employee. Tex. Educ. Code Ann. § 7.057(a).

> [I]f the constitutional claim is "ancillary to and supportive of a complaint about the board's handling of an employment contract or application of school law," such that the true nature of the claim,

---

term contract;  or

> (2) an action brought by the State Board for Educator Certification to enforce the educator's code of ethics adopted under Section 21.041(b)(8).

> (c) This section does not prohibit a school district from:

> (1) enforcing a policy relating to corporal punishment;  or

> (2) notwithstanding Subsection (a), bringing a disciplinary proceeding against a professional employee of the district who violates the district policy relating to corporal punishment.

Tex. Educ. Code Ann. § 22.0512; *see also* Tex. Penal Code Ann. § 9.62 (allowing for the use of force, but not deadly force, in the educator-student relationship "when and to the degree the actor reasonably believes the force is necessary to further the special purpose or to maintain discipline in a group").

16

although asserted as a constitutional violation, necessarily results from a violation of school laws or an employment contract, then [Texas Education Code] section 7.057(a) authorizes and requires the Commissioner to hear the appeal first, unless another exception to the exhaustion requirement applies.

*Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 553 (Tex. 2016). "'School laws of this state' means all the provisions of titles 1 and 2 of the Education Code and the administrative rules adopted under those titles." *Id.* at 546 (citing Tex. Educ. Code Ann. § 7.057(f)(2)).

Here, Montgomery's complaint based on the nonrenewal of his term contract concerns HCDE's application of school law and handling of the employment contract. *See* Tex. Educ. Code Ann. §§ 21.203, 22.0512. Accordingly, Montgomery was required to file an administrative appeal to the Commissioner of Education to exhaust his administrative remedies for a waiver of HCDE's immunity as to his constitutional violation claims. *See Marquez*, 487 S.W.3d at 553.

To exhaust his administrative remedies concerning the nonrenewal of his term contract, Montgomery was required to file grievances, appeal an unfavorable decision to an independent hearing examiner, appeal the hearing examiner's decision to the Commissioner of Education, and then appeal the Commissioner of Education's decision to a district court. *See* Tex. Educ. Code Ann. §§ 21.209, 21.307; *see, e.g.*, *Edinburg Consol. Indep. Sch. Dist. v. Esparza*, 603 S.W.3d 468, 470–72 (Tex. App.—Corpus Christi–Edinburg 2020, no pet.). However, Montgomery did not appeal the hearing examiner's decision concerning the nonrenewal of his term contract to the Commissioner of Education, and thus, did not exhaust his administrative remedies. *See* Tex. Educ. Code Ann. § 21.209. Therefore, we conclude that the trial court lacked subject-matter jurisdiction over

Montgomery's constitutional claim based on the nonrenewal of his contract.[9]

### b. Assault Leave & Earned Leave Time Benefits

> [A]n employee who is physically assaulted during the performance of the employee's regular duties is entitled to the number of days of leave necessary to recuperate from all physical injuries sustained as a result of the assault. At the request of an employee, the school district must immediately assign an employee to assault leave and, on investigation of the claim, may change the assault leave status and charge the leave against the employee's accrued personal leave or against an employee's pay if insufficient accrued personal leave is available.

*Id.* § 22.003(b). Montgomery's constitutional claims based on the denial of assault leave and use of his leave time implicates HCDE's application of school law. *See id.* §§ 7.057(f)(2), 22.003(b). Thus, prior to initiating his lawsuit, Montgomery was required to appeal this decision to the Commissioner of Education and then a district court in Travis County to exhaust his administrative remedies. *See id.* §§ 7.057(a), (d), 21.203, 22.0512; *Marquez*, 487 S.W.3d at 553. Because he failed to do so, we conclude that Montgomery did not exhaust his administrative remedies as to his constitutional claims based on the denial of his assault-leave benefits and the use of his earned leave time. *See Marquez*, 487 S.W.3d at 553.

### c. Workers' Compensation Benefits

Under the Workers' Compensation Act, a worker "who sustains a compensable injury is entitled to all health care reasonably required by the nature of the injury as and when needed." Tex. Lab. Code Ann. § 408.021(a); *see id.* § 401.011(10) (providing that compensable injury "means an injury that arises out of and in the course and scope of employment . . . ."). It is well established that the

---

[9] The same is true of Montgomery's constitutional claim based on a violation of Texas Education Code § 22.0512, if any, because it involves the application of school law and Montgomery did not exhaust his administrative remedies. *See* Tex. Educ. Code Ann. §§ 7.057(a), 22.0512.

18

Texas Department of Insurance, Division of Workers' Compensation ("DWC") has exclusive jurisdiction to determine a claimant's entitlement to workers' compensation benefits, subject to judicial review. *See id.* § 413.013; *In re Liberty Mut.*, 295 S.W.3d 327, 328 (Tex. 2009) (orig. proceeding) (per curiam); *Am. Motorists Ins. v. Fodge*, 63 S.W.3d 801, 803–04 (Tex. 2001). A logical extension of this principle is that a court has no jurisdiction to award damages predicated on the allegedly wrongful deprivation of workers' compensation benefits to an injured worker, except on judicial review, without a determination by the DWC that such benefits were due. *Fodge*, 63 S.W.3d at 804.

Thus, to exhaust his remedies concerning an alleged improper denial of a workers' compensation benefits, Montgomery needed to appeal the denial of his workers' compensation claim to the DWC. Montgomery failed to do so. Accordingly, we conclude that the district court lacks jurisdiction over Montgomery's constitutional claims based on the denial of his workers' compensation claim. *See id.*

Additionally, to the extent Montgomery argues that HCDE violated his constitutional rights by opposing workers' compensation benefits because of § 22.0512, Montgomery was required to exhaust his administrative remedies because this concerned an application of school law. *See* Tex. Educ. Code Ann. §§ 7.057(a), 22.0512; *Marquez*, 487 S.W.3d at 553; *see also Fodge*, 63 S.W.3d at 804 ("[A] court cannot . . . award damages for a denial in payment of compensation benefits without a determination by the Commission that such benefits were due."). Montgomery failed to do so.

### 2. Summary

We conclude that the trial court lacked subject-matter jurisdiction over

Montgomery's constitutional claims and sustain HCDE's seventh issue.[10]

## III.  CONCLUSION

We reverse the trial court's order and render judgment granting HCDE's plea to the jurisdiction. We dismiss Montgomery's case for want of subject-matter jurisdiction.

/s/      Margaret "Meg" Poissant

Panel consists of Justices Spain, Poissant, and Wilson.

---

[10] Because HCDE's seventh issue is dispositive as to Montgomery's constitutional claims, we need not address HCDE's fourth, eight, and ninth issues. *See* Tex. R. App. P. 47.1, 47.4.